# CHAPMAN ET AL. *v.* WINTROATH.

CERTIORARI TO THE COURT OF APPEALS OF THE DISTRICT
OF COLUMBIA.

No. 117.    Argued January 9, 1920.—Decided March 1, 1920.

An inventor whose application disclosed but did not claim an invention
   which is later patented to another, is allowed by the patent law two
   years after such patent issues within which to file a second or divis-
   ional application claiming the invention; and this period may not
   be restricted by the courts upon the ground that so much delay
   may be prejudicial to public or private interests.  P. 134.  Rev.
   Stats, § 4886.
Such a second application is not to be regarded as an amendment to
   the orginal application and so subject to the one year limitation of
   Rev. Stats., § 4894.  P. 138.
Nor can the right to make it be deemed lost by laches or abandonment
   merely because of a delay not exceeding the two years allowed by
   the statute.  P. 139.
47 App. D. C. 428, reversed.

THE case is stated in the opinion.

*Mr. John L. Jackson,* with whom *Mr. Albert H. Adams*
was on the brief, for petitioners:

An application for patent is a purely statutory pro-
ceeding, and an applicant is entitled to all the rights con-
ferred by the patent statutes.  *United States* v. *American
Bell Tel. Co.,* 167 U. S. 224, 246.

Under Rev. Stats., § 4886, an inventor may obtain a
patent for his invention provided, among other things,
it was not patented more than two years prior to his
application.  Therefore, even if their original application
be left out of consideration, the respondent's patent was
not a statutory bar to the grant of a patent to petitioners.

Rev. Stats., § 4904, which is the statutory authority

for the declaration of interferences, fixes no time limit within which the applicant of a pending application must claim an invention already patented to another in order to obtain an interference with such patent, other than that the patent must be unexpired. Respondent's patent was unexpired, and therefore petitioners were lawfully entitled to contest priority with him.

It is not disputed that petitioners' original application fully discloses the subject-matter of their divisional application and of the interference issue, and was never abandoned or forfeited, but was regularly prosecuted according to law and the rules of the Patent Office. Therefore, considering their original application merely as proof of their priority over respondent, they are indubitably the first inventors of the issue of the interference. *Victor Talking Mach. Co.* v. *American Graphophone Co.*, 145 Fed. Rep. 350, 351; *Automatic Weighing Mach. Co.* v. *Pneumatic Scale Co.*, 166 Fed. Rep. 288; *Sundh Elec. Co.* v. *Interborough Rapid Transit Co.*, 198 Fed. Rep. 94; *Lemley* v. *Dobson-Evans Co.*, 243 Fed. Rep. 391.

Interferences are authorized for the sole purpose of determining the question of priority of invention. "The statute is explicit. It limits the declaration of interferences to the question of priority of invention." *Lowry* v. *Aller* 203 U. S. 476; *Ewing* v. *Fowler Car Co.*, 244 U. S. 1, 1 .

It follows that, inasmuch as petitioners' applications (divisional as well as original) were filed less than two years after the grant of respondent's patent, and their priority over respondent is incontrovertibly established, judgment should have been rendered in their favor. *Ewing* v. *Fowler Car Co., supra.*

The rule announced in *Rowntree* v. *Sloan*, 45 App. D. C. 207, is direct y in conflict with Rev. Stats., §§ 4886, 4904. For more than forty years it has been the practice of the Patent Office to declare interferences between applicants

and patentees where the applicant made affidavit showing his conception of the invention prior to the filing of the patentee's application. Rule 51 (1870); Lowery's Annotated Interference Rules, p. 7. Moreover, until the amendment of March 3, 1897, to Rev. Stats., § 4886, which introduced the words "or more than two years prior to his application," a prior unexpired patent was never a bar to the grant of a patent to an applicant who could prove his claim to priority over it, regardless of when his application was filed. *Schreeve* v. *Grissinger*, 202 O. G. 951; C. D., 1914, 49, p. 51.

Rev. Stats., § 4904, provides for the declaration of interferences between an application and any unexpired patent, so that reading the latter section in connection with § 4886, when the Commissioner is of the opinion that an interference exists between an application and any unexpired patent issued not more than two years before the application was filed, the applicant has a statutory right to the declaration of such interference, and on proving priority, to receive his patent. *Ewing* v. *Fowler Car Co., supra.*

An applicant who prosecutes his application according to law and the Patent Office rules is not chargeable with laches. *United States* v. *American Bell Tel. Co.,* 167 U. S. 224, 246; *Crown Cork & Seal Co.* v. *Aluminum Stopper Co.,* 108 Fed. Rep. 845, 851; *Columbia Motor Car Co.* v. *Duerr & Co.,* 184 Fed. Rep. 893, 895.

The time when a claim is first made is immaterial, as when made it relates back to the date of filing of the application, and if made in a divisional application, it relates back to the date of filing of the original or parent application. *Lotz* v. *Kenney,* 31 App. D. C. 205; *Von Recklinghausen* v. *Dempster,* 34 id., 474.

Rev. Stats., § 4894, relates to the prosecution of applications to save them from abandonment, and has nothing whatever to do with abandonment of inventions.

The effect of the ruling in this case is that petitioners

constructively abandoned their invention to respondent, a later inventor, and that such constructive abandonment occurred while they had still pending, and were regularly prosecuting, an application for patent therefor.

The patent laws do not recognize such a thing as the constructive abandonment of an invention for which an applicant has lawfully filed, and is regularly prosecuting, an application for patent. Abandonment of an invention is a question of fact, and must be proven. *Ide* v. *Trorlicht Co.*, 115 Fed. Rep. 144; *Saunders* v. *Miller*, 33 App. D. C. 456; *Miller* v. *Eagle Mfg. Co.*, 151 U. S. 186; *Rolfe* v. *Hoffman*, 26 App. D. C. 336, 340; *Kinnear Mfg. Co.* v. *Wilson*, 142 Fed. Rep. 970, 973.

Abandonment of an invention is a very different thing from abandonment of an application for patent. *Western Elec. Co.* v. *Sperry Elec. Co.*, 58 Fed. Rep. 186, 191; *Hayes-Young Tie Plate Co.* v. *St. Louis Transit Co.*, 137 Fed. Rep. 82; *General Elec. Co.* v. *Continental Fibre Co.*, 256 Fed. Rep. 660, 663.

Abandonment of an invention completed and reduced to practice by the filing of an allowable application for patent therefor inures to the benefit of the public, and not to the benefit of a later inventor. *Ex parte Gosselin*, 97 O. G. 2977 (2979); *In re Millett*, 18 App. D. C. 186 (96 O. G. 1241).

Patent Office Rules 31, 68, 77 and 171, which provide for amendment of applications within one year from the date of the last official action of the Patent Office, all relate to abandonment of applications.

The statutes relating to constructive abandonment of inventions in all cases fix a limit of two years except when the application is filed in a foreign country more than one year before application is made in this country. Rev. Stats., §§ 4886, 4887, 4897, 4920.

The rule as to constructive abandonment in the case of applications for reissue, generally, though not invariably,

fixes a limit of two years. *Miller* v. *Brass Co.*, 104 U. S. 350; *Mahn* v. *Harwood*, 112 U. S. 354; *Wollensak* v. *Reiher*, 115 U. S. 101.

The ruling in *Rowntree* v. *Sloan*, that failure of an applicant to make the claim of an unexpired patent within one year from the date of such patent estops the applicant to make such claim at all, is arbitrary because it has no foundation in law, and is illogical because, if there be any ground for invoking the doctrine of estoppel in such a case, there is no reason why it should apply in one year rather than at any other time.

There can be no question of estoppel as between petitioners and respondent because the basic conditions to create an estoppel do not exist. There was no privity of relationship between the parties. Petitioners were unaware of respondent's application for patent. Respondent was not misled to his injury by any act or failure of petitioners.

It was not petitioners' duty, but the Commissioner's, to ascertain if there was an interference, and to declare it. *Ewing* v. *Fowler Car Co.*, *supra;* Rev. Stats., § 4904; Bigelow on Estoppel, 5th ed., pp. 26–28, 585, 594–597.

Laches or estoppel in this case is not ancillary to the question of priority.

The question of actual priority of invention having been foreclosed by respondent's admission, the Court of Appeals was without jurisdiction on an interference appeal to hear and determine petitioners' right to a patent. *Norling* v. *Hayes*, 37 App. D. C. 169; *Lowry* v. *Allen*, *supra.*

*Mr. Paul Synnestvedt*, with whom *Mr. H. L. Lechner* was on the briefs, for respondent:

While the patenting of an invention is purely statutory, the statute has been uniformly construed in the light of the underlying purpose of the patent system—the promotion

of the progress of science and the useful arts.. *Kendall* v. *Winsor*, 21 How. 322, 328.

Diligence is an axiomatic requirement; and there is a time limit within which claims to a particular invention shown, but not claimed, in an application may be added. *Ex parte Dyson*, 232 O. G. 755; *In re Fritts*, 45 App. D. C. 211; *Victor Talking Mach. Co.* v. *Edison*, 229 Fed. Rep. 999; *Christensen* v. *Noyes*, 15 App. D. C. 94; *Bechman* v. *Wood, id.*, 484; *Skinner* v. *Carpenter*, 36 *id.*, 178.

The statute itself lays down a *pre*-application rule of diligence and a *post*-application rule. Rev. Stats., §§ 4886, 4887, and § 4894.

Where an applicant has an application, showing, *inter alia*, but not at any time claiming, a particular feature, pending in the Patent Office for years, he should proceed at least within one year after the issuance of a rival patent for the same invention, to copy claims therefrom for the purpose of an interference, by analogy with Rev. Stats., § 4894.

The issue of a patent is constructive notice to the public of its contents. *Boyden* v. *Burke*, 14 How. 575–83.

If petitioners' divisional application be considered independently of the present application, they are out of court in their own admission of a prior public use of more than two years. If considered as a continuation of the parent application, *post*-application rules of diligence apply and they are guilty of lack of diligence.

Petitioners were never "regularly" prosecuting an application for the invention, and there is no basis in the statute or authority for the proposition that the mere presence of a drawing or description of a feature in an application constitutes a reduction to practice thereof such as will defeat a later inventor but earlier patentee. *Pittsburgh Water Heater Co.* v. *Beler Water Heater Co.*, 228 Fed. Rep. 683; *Saunders* v. *Miller*, 33 App. D. C. 456.

*Mr. Melville Church*, by leave of court, filed a brief as *amicus curiæ.*

*Mr. John C. Pennie, Mr. Dean S. Edmonds, Mr. Charles J. O'Neill* and *Mr. Helge Murray*, by leave of court, filed a brief as *amici curiæ.*

Mr. Justice Clarke delivered the opinion of the court.

In 1909 Mathew T. Chapman and Mark C. Chapman filed an application for a patent on an "improvement in deep well pumps." The mechanism involved was complicated, the specification intricate and long, and the claims numbered thirty-four. The application met with unusual difficulties in the Patent Office, and, although it had been regularly prosecuted, as required by law and the rules of the Office, it was still pending without having been passed to patent in 1915, when the controversy in this case arose.

In 1912 John A. Wintroath filed an application for a patent on "new and useful improvements in well mechanism," which was also elaborate and intricate, with twelve combination claims, but a patent was issued upon it on November 25, 1913.

Almost twenty months later, on July 6, 1915, the Chapmans filed a divisional application in which the claims of the Wintroath patent were copied, and on this application such proceedings were had in the Patent Office that on March 21, 1916, an interference was declared between it and the Wintroath patent.

The interference proceeding related to the combination of a fluid-operated bearing supporting a downwardly extending shaft, and auxiliary bearing means for sustaining any resultant downward or upward thrust of such shaft. It is sufficiently described in count three of the notice of interference:

"3. In deep well pumping mechanism, the combination with pump means including a pump casing located beneath the surface of the earth and rotary impeller means in said casing, of a downwardly extending power shaft driven from above and adapted to drive said impeller means, a fluid operated bearing coöperatively to support said shaft, said fluid operated bearing being located substantially at the top of said shaft so that the shaft depends from the fluid bearing and by its own weight tends to draw itself into a substantially straight vertical line, means for supplying fluid under pressure to said fluid bearing independently of the action of the pump means, auxiliary bearing means for sustaining any resultant downward thrust of said power shaft and auxiliary bearing means for sustaining any resultant upward thrust of said power shaft."

Wintroath admits that the invention thus in issue was clearly disclosed in the parent application of the Chapmans, but he contends that their divisional application, claiming the discovery, should be denied, because of their delay of nearly twenty months in filing, after the publication of his patent, and the Chapmans, while asserting that their parent application fully disclosed the invention involved, admit that the combination of the Wintroath patent was not specifically claimed in it.

Pursuant to notice and the rules of the Patent Office, Wintroath, on April 27, 1916, filed a statement, declaring that he conceived the invention contained in the claims of his patent "on or about the first day of October, 1910," and thereupon, because this date was subsequent to the Chapman filing date, March 10, 1909, the Examiner of Interferences notified him that judgment on the record would be entered against him unless he showed cause within thirty days why such action should not be taken.

Within the rule day Wintroath filed a motion for judgment in his favor "on the record," claiming that conduct on the part of the Chapmans was shown, which estopped

them from making the claims involved in the interference
and which amounted to an abandonment of any rights in
respect thereto which they may once have had.  The Chap-
mans contended that such a motion for judgment could
not properly be allowed "until an opportunity had been
granted for the introduction of evidence."  But the Ex-
aminer of Interferences, without hearing evidence, en-
tered judgment on the record in favor of Wintroath, and
awarded priority to him, on the ground that the failure
of the Chapmans to make claims corresponding to the in-
terference issue for more than one year after the date of the
patent to Wintroath, constituted equitable laches which
estopped them from successfully making such claims.
This holding, based on the earlier decision by the Court
of Appeals in *Rowntree* v. *Sloan*, 45 App. D. C. 207, was
affirmed by the Examiner in Chief, but was reversed by
the Commissioner of Patents, whose decision, in turn, was
reversed by the Court of Appeals in the judgment which
we are reviewing.

In its decision the Court of Appeals holds that an in-
ventor whose parent application discloses, but does not
claim, an invention which conflicts with that of a later
unexpired patent, may file a second application making
conflicting claims, in order to have the question of prior-
ity of invention between the two determined in an inter-
ference proceeding, but only within one year from the
date of the patent, and that longer delay in filing consti-
tutes equitable laches, which bars the later application.
By this holding the court substitutes a one-year rule for
a two-year rule which had prevailed in the Patent Office
for many years before the *Rowntree* decision, rendered in
1916, and the principal reason given for this important
change is that the second application should be regarded
as substantially an amendment to the parent application,
and that it would be inequitable to permit a longer time
for filing it than the one year allowed by Rev. Stats.,

§ 4894, for further prosecution of an application after office action thereon.

The question presented for decision is, whether this conclusion is justifiable and sound, and the answer must be found in the statutes and rules of the Patent Office made pursuant to statute, prescribing the action necessary to be taken in order to obtain a patent,—for the whole subject is one of statutory origin and regulation.

The statute which is fundamental to all others in our patent law, (Rev. Stats., § 4886, as amended March 3, 1897, c. 391, 29 Stat. 692,) provides with respect to the effect of a United States patent upon the filing of a subsequent application for a patent on the same discovery, which is all we are concerned with here, that any discoverer of a patentable invention, not known or used by others in this country, before his invention or discovery, may file an application for a patent upon it, at any time within two years after it may have been patented in this country. Such a prior patent is in no sense a bar to the granting of a second patent for the same invention to an earlier inventor, provided that his application is filed not more than two years after the date of the conflicting patent. The applicant may not be able to prove that he was the first inventor but the statute gives him two years in which to claim that he was and in which to secure the institution of an interference proceeding in which the issue of priority between himself and the patentee may be determined in a prescribed manner.

This section, unless it has been modified by other statutes or, in effect, by decisions of the courts, is plainly not reconcilable with the decision of the Court of Appeals, and should rule it.  Has it been so modified?

The section of the Revised Statutes dealing with inventions previously patented in a foreign country (Rev. Stats., § 4887, as amended March 3, 1903, c. 1019, 32 Stat. 1225), provides that no patent shall be granted on an

application for a patent if the invention has been patented in this or any foreign country *more than two years* before the date of the actual filing of the application in this country.

Section 4897 of the Revised Statutes (16 Stat. 202, c. 230, § 35), in dealing with the renewal of an application in case of failure to pay the final fee within six months of notice that a patent had been allowed, provides that another application may be made for the invention "the same as in the case of an original application." But such application must "be made *within two years* after the allowance of the original application."

And in Rev. Stats., § 4920, providing for pleadings and proofs in infringement suits it is provided that when properly pleaded and noticed the defendant may prove in defense that the patent declared on had been patented prior to the plaintiff's supposed invention "or *more than two years* prior to his application for a patent therefor," and also that the subject-matter of the patent "had been in public use or on sale in this country for *more than two years*" before the plaintiff's application for a patent.

Thus through all of these statutes runs the time limit of two years for the filing of an application, there is no modification in any of them of the like provision in Rev. Stats., § 4886, as amended, and no distinction is made between an original and a later or a divisional application, with respect to this filing right.

A brief reference to the decisions will show that until the *Rowntree Case*, the courts had left the filing right under Rev. Stats., § 4886, as untouched as the statutes thus had left it.

There is no suggestion in the record that the original application of the Chapmans was not prosecuted strictly as required by the statutes and the rules of the Patent Office and therefore, it is settled, their rights may not be denied or diminished on the ground that such delay may

have been prejudicial to either public or private interests. "A party seeking a right under the patent statutes may avail himself of all their provisions, and the courts may not deny him the benefit of a single one. These are questions not of natural but of purely statutory right. Congress, instead of fixing seventeen, had the power to fix thirty years as the life of a patent. No court can disregard any statutory provisions in respect to these matters on the ground that in its judgment they are unwise or prejudicial to the interests of the public." *United States* v. *American Bell Telephone Co.,* 167 U. S. 224, 247.

In re-issue cases, where there was no statutory time prescribed for the making of an application for the correction of a patent, and although unusual diligence is required in such cases, this court adopted the two-year rule as reasonable by analogy to the law of public use before an application for a patent. *Mahn* v. *Harwood,* 112 U. S. 354, 363; *Wollensak* v. *Reiher,* 115 U. S. 96, 101.

To this we must add that not only have later or divisional applications not been dealt with in a hostile spirit by the courts, but, on the contrary, designed as they are to secure the patent to the first discoverer, they have been favored to the extent that where an invention clearly disclosed in an application, as in this case, is not claimed therein but is subsequently claimed in another application, the original will be deemed a constructive reduction of the invention to practice and the later one will be given the filing date of the earlier, with all of its priority of right. *Smith & Griggs Manufacturing Co.* v. *Sprague,* 123 U. S. 249, 250; *Von Recklinghausen* v. *Dempster,* 34 App. D. C. 474, 476, 477.

These, a few from many, suffice to show that prior to the *Rowntree Case,* the decisions did not tend to modification of the statutory two-year rule.

The Court of Appeals recognizes all this law as applicable to an original application, but it finds warrant for

cutting the time limit to one year in the case of later applications in three reasons, viz: Because it is inequitable to allow so long a time as two years for filing a new application, claiming a discovery for which a patent has issued; because such a time allowance is contrary to public policy, as unduly extending the patent monopoly if the new application should prevail, and, finally and chiefly, as we have pointed out, because, regarding such a later application as substantially an amendment to the original application the court discovers, in analogy to the time allowed by statute for amendment to applications (Rev. Stats., § 4894), a reason for holding that the failure for more than one year to make a later, in this case a divisional, application, amounts to fa al laches.

However meritorious the first two of these grounds may seem to be they cannot prevail against the provisions of the statutes (*United States* v. *American Bell Telephone Co.*, *supra*), and the third does not seem to us persuasive because of the difference in the kind of notice which is given to the applicant under Rev. Stats., § 4894, and that given him when a patent is issued conflicting with his application.

The one-year provision of Rev. Stats., § 4894, as amended March 3, 1897, c. 391, 29 Stat. 693, is that an applicant for a patent, who shall fail to prosecute his application within one year after Patent Office action thereon, "of which notice shall have been given" him, shall be regarded as having abandoned his application, unless the Commissioner of Patents shall be satisfied that such delay was unavoidable. But when a conflict between inventions disclosed in applications escapes the attention of the Patent Office Examiners, Rev. Stats., § 4904, and a patent is issued, with claims conflicting with the disclosures of a pending application, the applicant receives only such notice of the conflict as he is presumed to derive from the publication of the patent. In the one case the notice

is actual and specific, in the other it is indefinite and constructive only. When the great number of patents constantly being issued is considered, many of them of a voluminous and complicated character, such as we have in this case, with many and variously worded claims, such an implied notice must necessarily be precarious and indefinite to a degree which may well have been thought to be a sufficient justification for allowing the longer two-year period to inventors who must, at their peril, derive from such notice their knowledge of any conflict with their applications.

As has been pointed out, the Examiner of Interferences did not permit the introduction of any evidence with respect to laches or abandonment and the Court of Appeals rests its judgment, as he did, wholly upon the delay of the Chapmans in filing their divisional application for more than one year after the Wintroath patent was issued, as this appeared "on the face of the record." While not intending to intimate that there may not be abandonment which might bar an application within the two-year period allowed for filing, yet upon this discussion of the statutes and decisions, we cannot doubt that upon the case disclosed in this record, the Chapmans were within their legal rights in filing their divisional application at any time within two years after the publication of the Wintroath patent, and therefore the judgment of the Court of Appeals must be

*Reversed.*

Mr. Justice McReynolds dissents.