## WESTINGHOUSE ELECTRIC & MFG. CO. v. JEFFREY–DE WITT INSULATOR CO.

Circuit Court of Appeals, Second Circuit.
November 1, 1927.

No. 19.

1. Patents ⬳109—Claims presented more than three years after filing original application held void, because of laches and under statute (35 USCA § 31).

Claims presented by amendment to divisional application, filed more than three years after filing of original application, during which period defendant's predecessor manufactured and sold alleged infringing device, held invalid, because of laches and under Rev. St. § 4886 (35 USCA § 31 [Comp. St. § 9430]), in absence of excuse for such delay, and where purchaser of title to the patent made no claim until nearly one year and five months after making the purchase.

2. Patents ⬳203—Purchaser of patent is chargeable with laches of his vendor.

Purchaser of a patent is not relieved from any laches chargeable to his vendor.

3. Patents ⬳76—Sale of invention over two years before filing of application for patent invalidates patent (35 USCA § 31).

Under Rev. St. § 4886 (35 USCA § 31 [Comp. St. § 9430]), sale of the invention more than two years prior to filing of application by which the patent was granted invalidates the patent.

4. Patents ⬳328—1,373,576, claims 1–6, for electric insulator for transmission lines, held void because of laches (35 USCA § 31).

Patent No. 1,373,576, claims 1–6, for an electric insulator for high-tension electric lines, particularly of the suspension type, held void, because of laches in presenting claims, and under Rev. St. § 4886 (35 USCA § 31 [Comp. St. § 9430]).

Appeal from the District Court of the United States for the Southern District of New York.

Patent infringement suit by the Westinghouse Electric & Manufacturing Company against the Jeffrey-De Witt Insulator Company. Decree for defendant, and plaintiff appeals. Affirmed.

Victor S. Beam and John C. Kerr, both of New York City, for appellant.

William S. Hodges, of Washington, D. C., and Oscar S. Blinn, of New York City, for appellee.

Before MANTON, SWAN and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. This suit is for infringement of patent No. 1,373,576, for an electric insulator. The original application was filed May 16, 1913, the application upon which this patent was granted was filed December 17, 1917, and the patent was granted April 5, 1921. The invention relates to insulators for high-tension electric lines, such as power transmission lines, but particularly of the suspension type. There are six claims sued on, claim 1 being typical and providing (a) a dielectric body having two end portions and a middle portion intermediate between the ends which take the tension load; (b) metallic rods arranged in a circle to take up the stress of the external attachment and engaging the ends of the insulator body; (c) means for distributing the external mechanical load, which means consist of the plates to which said rods are attached. Claim 2 differs from claim 1 in stating that the groups of rods are symmetrically arranged, instead of symmetrically arranged around a circle. Claim 3 differs in a functional statement that no particular portion of the brittle material will receive more than its share of the total tension stress. Claim 4 omits the reference to the uniform distribution of the mechanical tension stress, but includes the fact that the two sets of prongs are of different polarity. Claim 5 contains a specific limitation, not found in the first four claims, that the rods are confined to the end portions of the brittle material. Claim 6 contains another functional statement, describing an insulator constructed of dielectric material with metal prongs imbedded in the ends.

[1] In addition to the defense of invalidity of the patent and noninfringement by the appellee, a defense of equitable estoppel was interposed, arising from laches on the part of both the appellant and the inventor. On May 16, 1913, an application for a patent was filed by the inventor, Thomas, which eventuated in the patent, No. 1,250,387.

None of the claims disclosed by that application covered the subject-matter of the present patent, which was granted after a division. It resulted in the patent in suit. The subject-matter of the patent was illustrated and described in the earlier patent, but it was not claimed in any form. On August 7, 1913, the Patent Office required Thomas to elect which of the several inventions claimed in his original case he wished to retain therein, and directed that the claims of all the other forms be canceled. By amendment of July 25, 1914, he complied with these requirements, which are now embodied in patent No. 1,250,387. He retained the illustration and description of the structure for the patent in suit. From July 29, 1914, until December 17, 1917, no attempt was made to assert his right to the claim based upon the subject-matter now found in the patent in suit. It was one day prior to the issue of the parent patent that he filed a divisional application, which resulted in the issue of patent No. 1,-373,576. Therefore for three years there was no attempt to claim the invention in suit, or to protect it in any way.

[2] No advices were given to the appellee of his expectation to obtain or seek the patent protection of this subject-matter, and it appears that the appellee's insulator has been on the market, advertised and for sale, since the summer of 1915. In the fall of 1915, the appellee's predecessor, from whom it obtained title, entered into a contract for the manufacture of the insulators developed by it and now alleged to be an infringement. It is clear that in the summer of 1915 appellee's insulator was perfected and offered for sale. Advertisement matter relating to this insulator was widely circulated, and transmission engineers were said to be interested in purchasing the product. The evidence conclusively shows that from December, 1915, the earliest device alleged to be an infringement was on the market as a commercial and practical product, and that its manufacture continued without substantial change as to design and structure, and sales were made, increasing in number as time passed. These sales took place more than two years prior to December 17, 1917, when the divisional application was made. While the patent did not issue until April 25, 1921, and the appellant did not gain title until September 14, 1921, the fact remains the purchaser is not relieved from any laches chargeable to the vendor. Tompkins v. St. Regis Paper Co. (C. C. A.) 236 F. 221. It also appears that the appellant took no action until September 20, 1922, when it mailed a letter claiming

that its patent was being infringed. There would seem to have been, therefore, not only delay between the date of the patent and the filing of the suit, but also a delay between July 29, 1914, and the date of the divisional application, which was unreasonable, in and during which time the appellee had entered the field and developed its industry. Woodbridge v. U. S., 263 U. S. 50, 44 S. Ct. 45, 68 L. Ed. 159.

[3] Moreover, there is a statutory bar (section 4886, Rev. Stat. [35 USCA § 31; Comp. St. § 9430]) which prevents the appellant from succeeding, for there was a sale of the invention more than two years prior to the filing of the application upon which the patent was granted. This invalidates the patent. The patent being a division of an earlier parent patent, the courts have held that in the absence of laches, or estoppel of intervening rights, the rights under a divisional patent relate back to the date of the filing of the original application, and are in no way affected by an intervening bar; this, upon the theory that there could be no estoppel short of actual proof of abandonment. But recent cases in the Supreme Court have modified that rule. Chapman v. Wintroath, 252 U. S. 126, 40 S. Ct. 234, 64 L. Ed. 491, and Webster Electric Co. v. Splitdorf Co., 264 U. S. 463, 44 S. Ct. 342, 68 L. Ed. 792.

In the Chapman Case, the court asserted that a divisional application would have to stand on its own merits, so far as an independent patent of more than two years was concerned. And the effect of this decision is that an intervening statutory bar, more than two years prior to the filing of a divisional application, is fatal to the validity of the patent granted upon such an application. We later said, in American Laundry Machinery Co. v. Prosperity Co. (C. C. A. 2) 295 F. 819, that it was not intended by the decision in the Chapman Case to upset without comment such practice relative to divisional application. The Supreme Court, however, in Webster v. Splitdorf, supra, which did not involve a divisional application, but in which claims had been introduced in a pending application for the purpose of interference more than two years after the patent had issued, which had originally contained the claims, said that, in cases involving laches, equitable estoppels, or intervening private or public rights, the two-year time limit prima facie applied to divisional applications, and can only be avoided by the proof of circumstances justifying the longer delay. The effect of these decisions is that, if there is an intervening patent issued more than two years prior to the filing of a divisional application, the burden is imposed upon the divisional applicant or patentee to prove circumstances justifying the delay. This rule is applicable to any statutory bar, such as a public use or sale.

Here, on December 2, 1915, more than two years prior to December 17, 1917, the date of filing the divisional application, the insulators of the appellee were actually marketed and sales effected. There was no proof of special circumstances justifying this long delay. If the defendant's insulator is an infringement, then the sale referred to constitutes a bar to the patent; and, if it is not, it cannot be considered as an infringement. That such a sale was made is proved beyond doubt, both by the books of entries made relating to the shipment of the goods and the payment of invoice, and also by the persons who took the orders and executed them. Indeed, there is evidence of other sales, all prior to the two-year period. It was no answer to say that the specific sale referred to 12 insulators, which were bought for experimental purposes and were never used commercially. There is nothing in the statute which in any way limits the character of the sale, nor the purpose for which the goods were purchased in the open market. If it is a bona fide commercial sale, it is sufficient. And the proof of a single sale is sufficient. Covert v. Covert (C. C.) 106 F. 183; Dittgen v. Racine Paper Goods Co. (C. C.) 181 F. 394. An examination of the cases referred to by the appellant (Crown Cork & Seal Co. v. Aluminum Stopper Co. [C. C. A.] 108 F. 845; Weber v. Automobile Co. [C. C.] 190 F. 189; Ashley v. Tatum [D. C.] 240 F. 979; Krauth v. Autographic Co. [D. C.] 285 F. 199) discloses that there was no two-year bar of any kind established, and held merely that there was an absence of laches, estoppel, or intervening rights which render the reissue invalid.

[4] Since it has been clearly established that the sale was made two years prior to the filing of the divisional application, and no excuse given for such delay, the patent must be held to be invalid by reason of section 4886 of the Revised Statutes. We therefore need not consider the defense of noninfringement.

Decree affirmed.