## STERN et al. v. SCHROEDER et al.

Court of Customs and Patent Appeals.
December 19, 1929.

Patent Appeal No. 2160.

See also 36 F.(2d) 518.

Hans v. Briesen, of New York City (Fred A. Klein, of New York City, of counsel), for appellants.

Kenneth S. Neal, of New York City, for appellees.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge. This is an appeal, in an interference proceeding, from a decision of the Board of Appeals affirming the decision of the Examiner of Interferences awarding priority of the invention to appellees.

The apparatus involved in the interference is used for scoring and slotting blanks

of pasteboard in the production of folding boxes or cartons.

The counts of the interference read as follows:

"1. In a rotary box blanking machine, means for slotting a blank on opposite edges, and means for creasing the blank between said slots, said slotting and creasing means being constantly interengaged and adjustable simultaneously for varying the distance apart of the slots and creases and for automatically maintaining the creases in alignment with the slots.

"2. In a rotary box blanking machine, creasing means including a creasing roller, and slotting means for slotting the opposite edges of the blank, said slotting means including a roller having a groove therein, said roller being positioned so that the creasing roller will project into said groove whereby all of the parts are interengaged and are adjustable simultaneously for different sized blanks.

"3. In a rotary box blanking machine, a plurality of sets of slotting members adapted to be adjusted toward and from each other, said slotting members having parts which interengage whereby the units are adjusted as one member, and a creasing roller for each of the slotting units, said creasing rollers continually overlapping part of the slotting structure whereby they are automatically shifted toward each other with the slotting structures."

Appellants, Stern and Heuther, filed their application, No. 677,227, on November 27, 1923.

Appellees, Schroeder and Wagner, filed their application, No. 732,847, on August 18, 1924.

The Examiner of Interferences held that, as to the particular machines shown in the applications of both parties, and referred to in the record as the "four bar type," conception had been established as follows: Appellants, April 9, 1923; appellees, June 1, 1923. He further held that, if appellees had established conception of this particular type of machine at an earlier date, to wit, in either 1920 of 1921, as was claimed, "they were lacking in diligence with respect to such a machine just prior to and just after April 9, 1923 when Stern and Huether had successfully used such a machine." (It might here be said that, due to the state of the record, we do not consider, nor express any opinion upon, the question of the diligence of appellees with respect to the "four bar type" machine.) However, priority of invention was awarded to appellees, Schroeder and

Wagner, on the basis of a so-called "floating ring type" of machine, differing somewhat in construction from the "four bar type," but which, it was held, supported each of the counts in issue. The "floating ring" machine was constructed and sold by Schroeder and Wagner some time during the month of September, 1922. The Examiner of Interferences went into considerable detail in explanation of his holding that the so-called floating ring type machine supported the counts in the interference. In view of the fact that this question is a highly technical one, we deem it advisable, although it may extend this opinion considerably, to quote that portion of his decision relating thereto:

"In the machine in question there was a rotating male slotter above a rotating female slotter. The female slotter comprised two circular knives slightly spaced apart. Between those two blades was placed a ring of a diameter slightly greater than that of the female slotter. This ring was constantly urged upward by a spring pressed cradle on which it rested. The male slotting knife had two segmental knives attached to its periphery spaced 180 degrees apart. The slotting occurred when these knives cooperated with the two cutters of the female slotter. The rest of the time the male slotter presented a smooth cylindrical surface adjacent to the female slotter. The floating ring pressed against this cylindrical surface with sufficient force to crease the paper blank as it passed through the machine. Whenever one of the segmental cutters of the male slotter came opposite the female slotter it pushed the floating ring down into the groove of the female slotter.

"From what has just been said it is believed to be fully apparent that the floating ring of the Schroeder and Wagner 1922 machine was a 'means for creasing the blank between said slots.' It is believed to be plain also that the slotting and creasing means were constantly inter-engaged and adjustable simultaneously, the male slotter engaging the female slotter only at times, namely, when the cutting segments of the male slotter entered the female slotter. Stern and Hüether have shown the same relation and none other between the two slotters. The floating ring of the 1922 Schroeder and Wagner machine was so interengaged with the female slotter as to compel it to move along with the female slotter whenever the latter was adjusted along its shaft. The interengagement of the floating ring with the female slotter was due to the fact that the ring was in the groove of the slotter. The interengagement dis-

closed in Stern and Huether's application is likewise made between the single shiftable creasing element and the female slotter. The interengagement is of two kinds. The edge of the creasing disk passes within the groove of the female slotter. Besides this interengagement, the two are interengaged by means of a bar extending from the hub of one of the elements to the hub of the other. It is believed count 1 reads as well on the 1922 Schroeder and Wagner floating ring machine as it does on the two applications here directly involved.

"Count two calls for creasing means including a creasing roller. Unless the floating ring of the 1922 Schroeder and Wagner machine can properly be called a creasing roller, that machine did not support count 2. Unquestionably the floating ring, whatever its position in the groove in the female slotter, was constantly mounted on its supporting cage so as to enable it to roll around and around on its cage. Its constant contact with the male slotter required that kind of movement. It is therefore held that, taking the word 'roller' in its ordinary and proper meaning, it is properly applicable to the floating ring of the Schroeder and Wagner 1922 machine. It is believed to be plain from what has already been said that the female slotter which was 'a roller having a groove therein' was so positioned that the floating ring 'or creasing roller' projected into the groove of the female slotter and that as the result of this projection the creasing element moved with the female slotter on adjustment of the latter along its shaft. It is therefore held that the Schroeder and Wagner 1922 machine exemplified count 2.

"As for count 3 the main point to be determined is whether the floating ring, that is the creasing roller, continuously overlapped part of the slotting structure. One definition of 'overlap' as given in Webster's New International Dictionary is, 'to lap over; to overlie; either, to extend over a part of; or, to extend over and beyond.' Taking the last meaning, 'to extend over a part of; or, to extend over and beyond,' it is believed to be plain that the floating ring of the Schroeder and Wagner 1922 machine, whatever its position in the groove of the female slotter, in every case satisfied one or the other of the two parts of this definition. It is therefore held that the Schroeder and Wagner 1922 machine exemplified count 3 also."

An appeal was taken by appellants to the Board of Appeals, and it was there claimed, as it is claimed here, that the so-called floating ring type of machine constructed and sold by appellees in September, 1922, does not support the counts in issue; that appellants were entitled to a finding that they conceived and reduced the invention to practice as early as February 4, 1922; and that appellees could not claim the subject-matter of the interference in their application if the counts in the interference "were readable on their original patent 1,493,404 issued May 6, 1924."

In explanation of the latter claim, it may be said that appellees received a patent, No. 1,493,404, on the floating ring type of machine on May 6, 1924, on an application filed January 4, 1923.

The Board of Appeals affirmed the decision of the Examiner of Interferences, holding that appellants were not entitled to a finding that they conceived or reduced the invention to practice as early as February 4, 1922; that the so-called floating ring type of machine constructed and sold by appellees in September, 1922, supported the counts in the interference; and that appellees were entitled to an award of priority.

The real issue before this court is whether the floating ring machine constructed and sold by appellees in September, 1922, conforms to the claims in issue. If it does, appellees were clearly entitled to the award of priority. We have studied the record with care, and particularly that portion of the decision of the Examiner of Interferences (affirmed by the Board of Appeals without extended comment) where the counts in issue were applied to the floating ring machine of appellees. The questions involved are highly technical. It has repeatedly been held, in cases of this character, that when the tribunals of the Patent Office concur in findings of fact, such findings will not be disturbed by this court, unless the decision appealed from is manifestly wrong. Jobski v. Johnson, 47 App. D. C. 230, and cases cited therein; Blaine v. White, 50 App. D. C. 38, 267 F. 340. See, also, Ruth v. Groch, 51 App. D. C. 226, 277 F. 861; and Oldroyd v. Morgan, 58 App. D. C. 78, 24 F. (2d) 1004.

Counsel for appellants argue, however, that, even if this court should agree with the tribunals below on the issues of fact involved in the case, appellees are not entitled to a decision in their favor because of the principles announced in the case of Chapman et al. v. Wintroath, 252 U. S. 126, 40 S. Ct. 234, 64 L. Ed. 491. In that case the Supreme Court held that an inventor, whose original application fully disclosed but did not claim an invention which was later patented to another, was entitled under the law to a period

of two years after the patent was issued within which to file either a divisional or other application for the invention. We are at a loss to understand how this decision, if it has any application to the issue at bar, can be helpful to appellants. The question of patentability of the claims in the interference appears, if not actually, at least inferentially, to have been raised. This question is not now before us.

We are unable to hold that error has been committed in awarding priority of invention to appellees. Accordingly, the decision is affirmed.

Affirmed.

