23 C.C.P.A. (Patents)

## KNIGHT v. KING.

### Patent Appeal No. 3606.

Court of Customs and Patent Appeals.
April 20, 1936.

A. D. Salinger, of Boston, Mass., and Harry E. Dunham and Fairfax Bayard, both of Schenectady, N. Y., for appellant.

George H. Strickland, of Dayton, Ohio, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an interference proceeding in which the party Knight has appealed to this court from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority to the party King.

On April 12, 1927, Knight filed an application, serial No. 183,205, in the United States Patent Office, seeking patent on "an improved refrigerator cabinet." During prosecution of the application it was several times amended. It is asserted by counsel for King that the first claim offered by Knight which King was entitled to make was offered November 20, 1930. Under the facts of the case we do not regard this date as being material. The application matured into patent No. 1,810,615 on June 16, 1931, containing the following as claim 12: "12. A refrigerator wall construction

having an inner metal wall member, an outer wall member spaced therefrom, and another wall member of a non-metallic non-hydroscopic material having low heat conductivity and extending between the inner and outer wall members to form a closure for the space between said wall members."

The application of King was filed February 6, 1926. Into it, on August 3, 1932, there was copied, for the purpose of interference, the claim so allowed in the patent to Knight, and on June 8, 1933, the interference was declared with said claim constituting the sole count of the issue.

The preliminary statement of Knight was found by the Examiner of Interferences to have alleged a date of conception subsequent to King's filing date, and Knight was served with notice to show cause why judgment upon the record should not be entered against him. In response to such notice Knight presented a motion from which we quote the following:

"Now comes the party Knight by his attorney and in response to the order to show cause moves that times be set to take testimony in the above entitled interference in order to prove that the subject matter of this interference was published in a printed publication and was in public use more than two years prior to the time that the party King first made any claims in his application to the subject matter of this interference, unless the party King admits such publication and public use.

"The object of taking such testimony is to show that said party King is estopped to make the claim constituting the issue of the interference under the doctrine of Wintroath v. Chapman [sic], 252 U.S. 126, 40 S.Ct. 234, 64 L.Ed. 491, and Webster Electric Co. v. Splitdorf Electrical Co., 264 U.S. 463, 44 S.Ct. 342, 68 L.Ed. 792.

"Said party Knight further moves that after the taking of said testimony and hearing thereon, a judgment be entered either (1) dissolving the interference upon the facts hereinabove set forth for the reason that King is estopped to obtain a patent upon the invention in issue regardless of whether Knight is entitled to his patent thereon as prior inventor or (2) that judgment be entered awarding priority to Knight upon such facts for the reason that King is estopped to assert his alleged inventorship of said invention."

The relief sought of this court is expressed in the last paragraph of Knight's petition of appeal as follows: "Wherefore your petitioner prays that said appeal may be heard upon and for the reasons assigned therefor to the Commissioner, as aforesaid, and that said appeal may be determined and the decision of the Commissioner revised and reversed, and that the Commissioner be instructed that there can be no legal award of priority until your petitioner be given an opportunity to establish by testimony the facts set forth in your petitioner's motion aforesaid and in the affidavits of record in your petitioner's application which are referred to in said motion."

In view of this prayer, it seems proper at this time to direct attention to the specific matters contained in Knight's motion, upon which he sought to take testimony. As we interpret the first paragraph of the motion quoted above, he sought to take testimony for the purpose of establishing only that more than two years before King *made any claims* to the subject-matter of the interference, such subject-matter had been (1) published in a printed publication and (2) in public use. It is not questioned that King's original disclosure supports the count.

In support of Knight's motion it was alleged that his invention was described in a paper appearing in a publication issued in August, 1929; that an affidavit of Knight, filed with an amendment made May 31, 1928, alleged that up to that time more than 26,000 "boxes" embodying his invention had been built, and that an affidavit of one Stevenson, an employee of General Electric Company, to whom Knight's patent stands assigned, filed with an amendment of April 25, 1930, alleged that up to that time more than 400,000 refrigerator cabinets had been built in accordance with Knight's invention and had "given entire satisfaction."

The affidavits so alluded to are contained in the record before us.

It is pointed out on behalf of Knight that King did not copy the claim until about thirteen and one-half months after the issuance of the Knight patent, and it is alleged that this delay, when considered in the light of the facts that Knight proposed to prove, "was unreasonable and constitutes laches creating an estoppel against King, of that type upheld by the Supreme Court in Chapman v. Wintroath, 252 U.S. 126, 40 S.Ct. 234, 235, 64 L.Ed. 491." Therefore, the action of the Board of Appeals in af-

firming the decision of the Examiner of Interferences denying the motion to take proof is assigned as error in the appeal to us, and this assignment seems to us to be the only assignment upon which, in the state of the pleadings, there is any occasion for this court to pass.

The case of Chapman et al. v. Wintroath, supra, is so familiar that no extended review of it is deemed necessary here.

Briefly, it may be said that about twenty months after the issuance of a patent to Wintroath the Chapmans filed a *divisional* application, copying the claims of the patent; that an interference was declared; that Wintroath's preliminary statement alleged a date of conception subsequent to the filing date of the Chapmans' original application; that Wintroath filed a motion for judgment in his favor on the record, alleging, in the words of the Supreme Court, "that conduct on the part of the Chapmans was shown, which estopped them from making the claims involved in the interference and which amounted to an abandonment of any rights in respect thereto which they may once have had"; that the Chapmans contended that such motion for judgment could not properly be allowed until an opportunity had been granted for the introduction of evidence; that the examiner without hearing any evidence entered judgment in favor of Wintroath, holding that the delay of the Chapmans for more than one year constituted equitable laches which estopped them from making the claims, basing his decision upon Rowntree v. Sloan, 45 App. D.C. 207; that his decision was affirmed by the Examiner in Chief but reversed by the Commissioner of Patents, and that the Court of Appeals of the District of Columbia reversed the commissioner.

The Supreme Court granted certiorari and upon consideration of the case reversed the Court of Appeals. In the course of its opinion, the Supreme Court said: "There is no suggestion in the record that the original application of the Chapmans was not prosecuted strictly as required by the statutes and the rules of the Patent Office, and therefore it is settled their rights may not be denied or diminished on the ground that such delay may have been prejudicial to either public or private interests. 'A party seeking a right under the patent statutes may avail himself of all their provisions, and the courts may not deny him the benefit of a single one. These are questions not of natural but of purely statutory right. Congress, instead of fixing seventeen, had the power to fix 30 years as the life of a patent. No court can disregard any statutory provisions in respect to these matters on the ground that in its judgment they were unwise or prejudicial to the interests of the public.' United States v. American Bell Telephone Co., 167 U.S. 224, 247, 17 S.Ct. 809, 813, 42 L.Ed. 144."

The Supreme Court further said: "As has been pointed out, the Examiner of Interferences did not permit the introduction of any evidence with respect to laches or abandonment and the Court of Appeals rests its judgment, as he did, wholly upon the delay of the Chapmans in filing their divisional application for more than one year after the Wintroath patent was issued, as this appeared 'on the face of the record.' While not intending to intimate that there may not be abandonment which might bar an application within the two-year period allowed for filing, yet upon this discussion of the statutes and decisions, we cannot doubt that upon the case disclosed in this record, the Chapmans were within their legal rights in filing their divisional application at any time within two years after the publication of the Wintroath patent."

When the facts in the case at bar are considered in the light of the Chapman et al. v. Wintroath decision, supra, it seems to us quite clear that the contentions here made on behalf of the party Knight are untenable.

Knight did not allege, nor did he ask to prove, that King's application, to quote from the decision of the Supreme Court, supra, "was not prosecuted strictly as required by the statutes and the rules of the Patent Office." No conduct on the part of King himself is referred to, except delay. All that Knight asked to be permitted to prove was publication and public use of the invention more than two years prior to the time when King copied the claim.

We are unable to see how, had the facts alleged been proven, they could have affected King's right to make the claim or to contest with Knight the question of priority.

The board says: "Since the testimony which Knight sought in his motion to take could not have established that Knight made the invention prior to King or that King is estopped to contest priority with Knight, we believe the Examiner properly denied the motion."

Under the doctrine in the Chapman et al. v. Wintroath Case, supra (we again use language of the Supreme Court), "we cannot doubt that upon the case disclosed in this record," King was within his legal rights in making the claim at the time he did, and the fact that it was not made until some thirteen and one-half months after the issuance of the Knight patent does not of itself constitute equitable laches which estops him from making it, nor would such laches appear if the delay were coupled with the particular and specific facts which Knight sought to prove.

Many other authorities are cited in the briefs for the respective parties, but no review of them is necessary. None contains anything regarded as inconsistent with our holding here.

The decision of the Board of Appeals is affirmed.

Affirmed.