26 C.C.P.A. (Patents)

## WALSKO v. SMITH. *
### Patent Appeal No. 4063.

Court of Customs and Patent Appeals.
Feb. 27, 1939.

Pennie, Davis, Marvin & Edmonds, of New York City (Louis D. Forward, of New York City, and Clarence M. Fisher, of Washington, D. C., of counsel), for appellant.

Charles W. Parker and Max D. Farmer, both of Buffalo, N. Y., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

This is an appeal by Walsko, the junior party, from a decision of the Board of Appeals of the United States Patent Office, affirming that of the Examiner of Interferences in awarding priority of invention of a single count to the senior party Smith.

The count reads as follows: "In refining hydrocarbon mineral oil, the improvement which comprises subjecting the oil to the action of nitrobenzene and sulphuric acid at the same time."

On August 1, 1931, the party Walsko filed his application in the Patent Office relating to an improvement in the refinement of lubricating oils derived from petroleum. Refining or purifying lubricating oils by a treatment with sulphuric acid was old in the art before either party entered the field. Walsko's invention consisted in mixing with the lubricating oil to be treated a large quantity of nitrobenzene and a relatively small quantity of sulphuric acid at the same time. The proportions given were nitrobenzene from 50 per centum to 400 per centum of the volume of the oil, and sulphuric acid from 0.1 to 10 pounds per barrel of oil treated. It was found that by applying this process there was a great improvement of the refined product in stability, color, viscosity index and in the reduction of the carbon residue when given the Conradson test, as well as other claimed beneficial results. There was no chemical reaction between the sulphuric acid and the nitrobenzene.

During the prosecution of the Walsko application the Primary Examiner suggested the count at bar for interference purposes to the senior party Smith, who copied it, and the interference proceedings were begun. Smith had filed his application on February 27, 1930, the application being "For Method of Removing Impurities from Hydrocarbon Compounds and Mixtures Thereof." The application as filed described in a general way the use of certain so-called accelerating or inhibiting agents along with the sulphuric acid treatment in bringing about the removal of sulphur and other impurities. The application was quite indefinite as to the quantity of the inhibiting agents suggested except that it was stated that the quantity was "in general less than the molal quantity of the sulphur removal agent employed." Smith then proceeded to suggest what the Primary Examiner stated would include between 5,000 and 10,000 different inhibiting compounds, which, when combined with the 200 different acidic substances named, would require, according to the examiner, between one million and two million individual experiments to determine their applicability. Among the inhibiting agents *nitrobenzene* was named. It was not there disclosed nor is it here contended that the inhibiting agents named were equivalents.

The claims in Smith's application were rejected on various grounds. New claims were substituted and finally, in order to secure the allowance of certain claims, it was found necessary for Smith to strike from his application all reference to the inhibitors except that originally listed as furfural. All references in the specification to the other inhibitors were deleted, together with claims covering the same.

About two and a half months after having cancelled from his application the said subject matter, he, when notified by the examiner to copy the count here involved for interference purposes, amended his application to disclose and claim the use of nitrobenzene as an accelerator or inhibiting agent. The application as amended, therefore, discloses the use for said purposes of both furfural and nitrobenzene.

Walsko was duly notified to show cause why judgment on the record should not be entered against him. In response to this order, and during the motion period, Walsko moved to dissolve the interference on substantially the following grounds:

First. Irregularity in the declaration of the interference in that no application of the party Smith containing a disclosure of the process involved in the count was in existence at the time the interference was declared.

Second. That the party Smith had no right to make the claim because his original disclosure was too indefinite to support the issue or meet the requirements of the statute.

Third. That the party Smith had no right to make the claim because the application contained no operative disclosure.

Fourth. That the party Smith had no right to make the claim because the claim was broader than the invention.

Fifth. That the interference count was unpatentable in that no utility was shown.

Sixth. That Smith should be estopped from reinstating and claiming said subject matter after he had cancelled the same and concealed the invention until spurred into activity by knowledge of Walsko's application.

After much argument, discussion, and preliminary rulings by the Examiner of Interferences, and an interlocutory appeal to the Commissioner of Patents asking him to exercise his supervisory authority, it was held by the Examiner of Interferences that the party Smith was "estopped to assert the claim in issue" for the reason that he had cancelled all the specific subject matter upon which the issue might be based as well as the claims defining said subject matter. The Examiner of Interferences pointed out that there was no requirement for division made nor was there any indication that the cancellation was made for the purpose of division and that Smith's action in cancelling said matter constituted a disclaimer of the subject matter in issue.

From the decision of the Examiner of Interferences dissolving the interference on the ground stated, Smith took an appeal to the Board of Appeals which reversed the decision of the Examiner of Interferences and held as follows:

"The limitation of the count which was cancelled from the Smith application during its prosecution is found in the statement of the use of nitro-benzene. This particular inhibiting agent was disclosed in the original specification but later was cancelled therefrom. The claims indicated as being allowable during the prosecution recited the use of furfural. After such restriction of the Smith application, the examiner suggested to Smith the claim of the count. It is the contention of Walsko that Smith has abandoned its subject matter.

"We are unable to agree with the examiner that this contention is sound. The Smith application has not matured into a patent and Smith is entitled at any time before a patent issues thereon and while the application is still pending, to file a divisional application claiming the subject matter of the count. In view of the practice approved in Ex parte Priebe, 1915 C.D. 39, he is also entitled to insert the claim of the count in his application involved in this proceeding for interference purposes. We fail to see wherein there has been established any abandonment by Smith of the invention defined in the count."

The Examiner of Interferences having overruled the motion of Walsko on all other grounds, except that relating to the non-patentability of the count, which he declined to consider, and being bound by the decision of the Board of Appeals in its reversal of his decision dissolving the interference, awarded priority to the senior party Smith. Walsko then presented a motion to set aside the award of priority in order that he might have the opportunity of taking testimony to show that the Smith application contained no operative disclosure of the method defined by the count in issue. The motion was granted and much testimony was taken by Walsko in an attempt to show that Smith did not disclose a method operative to produce useful results. Smith also took some testimony for the purpose of showing the operability of the method of his disclosure. The Examiner of Interferences in his final decision recapitulated the history of the case

and proceeded to decide the question raised relating to the subject of inoperativeness. Much space was devoted to a discussion of the evidence on this subject, but he concluded that Walsko had not established by a preponderance of the evidence that the Smith disclosure was inoperative and awarded priority of invention of the count to the senior party Smith.

Appeal was taken by Walsko to the Board of Appeals. The board first took up the question of inoperativeness, discussed the various tests which Walsko had made; held that the record did not show that the disclosure of the Smith specification was in all respects inoperative, and in substance held that the said tests did show certain useful results and that Smith was not required to show that he understood all the advantages flowing from his invention but was entitled to all that did flow from it. Concerning patentability the board said: "Moreover, Walsko states his invention is directed to improvements in lubricating oils and not as broadly expressed in the count. He has practically disclaimed the issue so no award of priority could be granted him and he might even be allowed a claim to such lubricating oil. We note Walsko did not attempt to raise the question of patentability on motion."

On the question raised by Walsko in his motion to dissolve, relating to the cancellation by Smith from his application of all matter relating to the instant invention and subsequently re-inserting and claiming it, the board merely called attention to its former interlocutory ruling on that subject. It affirmed the action of the examiner in awarding priority to Smith.

■ Appellant appealed from the decision of the board to this court and here raises many questions, among them being the question of the patentability of the method of the count. It is too well settled to require extended argument or citation that questions relating to patentability of the count of an interference are not matters of which we can take cognizance in this character of proceeding. Ufer and Niemann v. Williams, 79 F.2d 892, 23 C.C.P.A., Patents, 797; Brogden v. Slater, 40 F.2d 988, 17 C.C.P.A., Patents, 1240; Gowen v. Hendry et al., 37 F.2d 426, 17 C.C.P.A., Patents, 789.

We think the record presents for our decision the following questions involved in the motion to dissolve the interference:

First. Does Smith's original disclosure support the count in issue so as to give him the advantage of his original filing date?

Second. Does Smith's recited conduct with reference to the cancellation and subsequent re-insertion of all matter which supports the count at bar require that the interference be dissolved on the ground that Smith had no right to make the claim?

Third. Is the method of the Smith disclosure operative?

All other questions raised by appellant's reasons of appeal are so related to the foregoing three that their decision is decisive of every issue here presented. The first two questions present some perplexing aspects upon which, as applied to the particular circumstances at bar, there is very little authority to be found.

As to whether Smith's original disclosure supports the count in issue, it is contended by Walsko that the application was so multifarious in the naming of the various inhibitors as to be so indefinite as not to comply with the statute, and that no valid claim could properly have been allowed upon the original disclosure since it did not teach the art anything of utility and that millions of experiments would be required to ascertain if the applicant had discovered anything of value.

■ After much consideration we find ourselves in agreement with the tribunals below in holding that, notwithstanding the defects in Smith's original application, pointed out by Walsko, it was properly regarded as disclosing the invention of the count for the purpose of interference. It did disclose the use at the same time of sulphuric acid and nitrobenzene in the removal of certain impurities from hydrocarbon oils. It seemed to be a controlling influence with the tribunals below that appellee's original disclosure, if in a publication, would have been regarded as anticipatory of the count involved. Smith disclosed the use of sulphuric acid and nitrobenzene, in the manner described, to accomplish certain results in the art involved, and it is not important that his aim in adding the admixture was the same as that stated in Walsko's application or that all the same results were obtained. It seems to us, on this phase of the case, that it was sufficient if he disclosed the use at the same time of the ingredients in accomplishing any useful purpose in refining hydrocarbon mineral oils.

On the second question relating to the right of Smith to make the claim because of his cancellation and subsequent reinsertion of matter supporting the count at bar we also are in agreement with the Board of Appeals in its original ruling on the question and its decision to that effect which is here appealed from. Smith has argued at great length in this court that his cancellation of the disputed matter was not with the intent of abandonment but was for the definite purpose of later including the same in a divisional application. Much unwarranted argument, upon statements of facts not disclosed in the record, is indulged in the Smith brief which is not to be commended. There is nothing in this record, as was pointed out by the Examiner of Interferences in one of his decisions on the motion to dissolve, which discloses affirmatively that Smith's cancellation was in response to any order for division (the record discloses no such order) or that Smith intended at the time of cancellation to later cover the cancelled subject matter by a divisional application. Notwithstanding this fact, we are confronted with the proposition that Smith did clearly have the right by virtue of his original disclosure to claim in a divisional application, at any time before his patent issued, the nitrobenzene subject matter which is the heart of the controversy involved here. Since this was his privilege it must be concluded that there was such continuity as the law requires between his original application and any divisional application which he might subsequently file prior to the issuance of his patent.

A somewhat similar situation existed in the case decided by this court in Writer v. Kiwad, 63 F.2d 259, 20 C.C.P.A., Patents, 869. In that case, 63 F.2d at page 264, 20 C.C.P.A., Patents, at page 878 we said:

"In view of the facts of record, appellee, for interference purposes, might properly have been permitted to withdraw the amendment cancelling the drawings and descriptive matter, and to present the claim constituting the count in issue, and other claims to the involved invention (previously found to be allowable), in his 1926 application. Ex parte Priebe, 1915 C.D. 39, 221 O.G. 351; Ex parte Stimson, 1916 C.D. 20, 226 O.G. 699.

"There is no statutory provision, nor Patent Office rule, limiting the time in which a divisional application may be filed in order that it may constitute a continuance of a pending, not abandoned, parent application, which discloses the invention claimed in the divisional application. Duryea v. Rice, 28 App.D.C. 423, 434; Robinson v. Heising, 55 F.2d 472, 19 C.C.P.A. [Patents] 895; Chapman v. Wintroath, supra, [252 U.S. 126, 40 S.Ct. 234, 64 L.Ed. 491]. Furthermore, under the circumstances of this case, mere delay in the filing of a divisional application is not evidence of abandonment of an invention. Chapman v. Wintroath, supra."

Walsko, in urging that the doctrine of estoppel should be applied to Smith, calls attention to but one decision of any tribunal which he claims to be in point on the question—Benjamin T. Brooks v. Carleton Ellis, a manuscript decision of the Board of Examiners-in-Chief (predecessor of the present Board of Appeals) in interference No. 40,012, dated January 15, 1917. This decision is cited in connection with Walsko's contention that Smith by his cancellation and subsequent conduct suppressed and concealed his invention until spurred into activity by Walsko, or the Primary Examiner on behalf of Walsko. It is argued that the same doctrine applies as was applied in such cases as Mason v. Hepburn, 13 App.D.C. 86, where the estoppel arose from conduct subsequent to actual reduction to practice.

The Brooks v. Ellis decision has been examined with considerable care. The board in the decision here appealed from and in its original decision, in which it reversed the action of the Examiner of Interferences on this particular question, makes no reference to that decision. In that case, Ellis sought to obtain the benefits, for interference purposes, of the filing date of an application from which he had cancelled certain disputed matter. He cancelled it upon an order for division. After Brooks had been granted a patent and Ellis became advised of the Brooks patent, he filed a divisional application claiming the disputed subject matter. Ellis delayed two years and three months from the time of the requirement of division until he filed his divisional application, and in the meantime Brooks had filed. The Examiners-in-Chief stated: " * * * Under these circumstances the usual rule that the divisional application may be filed at any time during the pendency of the original should not apply, for Ellis is here asking the benefit of the date of his original application as a date of construc-

tive reduction to practice as against his rival, who has been granted a patent and has given the public the benefit of the invention, in spite of the fact that Ellis had ceased for more than two years to prosecute his right to a patent on the interfering matter, and so far as appears, might never have given the invention to the public if he had not been stirred into activity by knowledge of the patent to Brooks. * * *"

The difference between that case and the one at bar is sufficiently shown by the above-quoted language used by the tribunal to warrant the conclusion that if we were in agreement with that decision (as to which we express no view), it would not be regarded as controlling of decision of the instant issue. Walsko did not have a patent when the interference was declared, a period of only about two months had elapsed after the cancellation before the amendment was made, and there is nothing to indicate that in due course Smith might not have filed a divisional application so as to have claimed the disputed subject matter. The facts in that case indicate, in some respects, a definite intention to conceal and suppress until spurred into activity. We see nothing of similar nature appearing from the facts of record here.

█ The third question for decision relates to the effect to be given to the proof of both parties relating to operability. This question is somewhat related to the first question discussed, but certain aspects of it, we think, justify a separate consideration. The first question involves primarily the indefiniteness of the application, as originally filed, resulting from the multiplicty of inhibitors listed. The issue of operability was separately presented to the Patent Office tribunals upon the record made following the setting aside of the award of priority for the purpose of taking testimony on the subject of operability. Both tribunals concluded, and the correctness of this conclusion is vigorously challenged by appellant, that while the proof showed that all the beneficial results which belonged to the invention were not disclosed by the tests made by Walsko in following out the teachings of Smith's original disclosure, it did show that some good results flowed therefrom, that is to say, some utility was shown to result in the treatment of hydrocarbon oils, including lubricating oils, with sulphuric acid and nitrobenzene.

We have examined the record with care and agree with the tribunals below in this finding. Detailing here the many elaborate experiments and the results found therefrom discussed at length by the tribunals below, would unduly extend this opinion and would serve no useful purpose. It would seem to us that if many unusual good results were obtained by Walsko in treating lubricating oils with sulphuric acid and nitrobenzene in the quantities stated by him, it could not logically be concluded that no useful results would be obtained by the treatment with the same materials, though in different quantities. It will be noticed that the count does not call for the use of any definite proportions of sulphuric acid or nitrobenzene. Under the circumstances, therefore, it cannot be said that the board was in error in concluding that Walsko had not shown that Smith's original disclosure was not operable to the extent that the interference should have been dissolved.

█ Appellant points out that the Examiner of Interferences stated in substance that this interference should not have been declared and that the board had indicated some doubt as to the patentability of the count. As we view it, upon this record, these are matters with which we are not concerned. The right of Smith to be granted, in his pending application or in any other application, a claim corresponding to the count in controversy, is a matter for the ex parte consideration of the Patent Office. If the subject matter of the count in issue is unpatentable or if for any other reason, not involved in issues decided here, Smith is not entitled to such a claim, presumably the Patent Office will take such steps as the law requires.

The decision of the Board of Appeals is affirmed.

Affirmed.