## ROBINSON v. HEISING.
### Patent Appeal No. 2844.

Court of Customs and Patent Appeals.
Feb. 1, 1932.

Sturtevant & Mason, of Washington, D. C. (Herbert H. Porter, of Washington, D. C., of counsel), for appellant.

J. W. Schmied, of New York City, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is an interference proceeding in which the Board of Appeals of the United States Patent Office, affirming the decision of the Examiner of Interferences, awarded priority to the junior party, Heising, upon six counts, being all the counts involved. Appeal from the decision of the Board was then taken to this court.

The several counts appeared as claims in a patent issued to Robinson June 1, 1926, being patent No. 1,587,084, issued on an application filed November 1, 1920. There was pending, at the time of the issuance of the said patent to Robinson, an application by Heising, serial No. 72,229, filed November 30, 1925, and stated in said Heising application to be a continuation in part of each of Heising's "copending applications, serial Nos. 327,744 and 753,029, filed, respectively, October 1, 1919 and December 1, 1924."

It was held by the tribunals of the Patent Office that said patent to Robinson was inadvertently issued. Heising copied therefrom five of the six claims which constitute the counts in issue, and was permitted to make the sixth claim (count 6) by reason of a decision of the Law Examiner under Patent Office rule 109.

It appears from the petition of appeal that the interference was declared March 2, 1927.

From the decision of the Examiner of Interferences we quote the following:

"The subject matter of this interference relates to a three electrode vacuum tube having an external circuit connecting the grid and cathode and another external circuit connecting the anode and cathode, the two external circuits having a portion in common. In this common portion is located an aperiodic loop or branched circuit having predominant resistance in one branch and predominant capacity in another. By reason of the capacity in this aperiodic loop circuit, there is a different response at one frequency than at another frequency so that in effect there is a tendency to oppose low frequency variation in the anode current. The issue is composed of six counts of which counts 1, 4, 5 and 6 are sufficiently illustrative and read as follows:

"Count 1. The combination with an electron discharge device having a cathode, an anode and a grid, of an external circuit connecting the cathode and grid and having intercalated means to impress upon said grid an actuating potential, a second external circuit connecting said cathode and anode and having a portion in common with said first external circuit, and an aperiodic loop in series in the common portion of said circuits to oppose variation of the anode current.

"Count 4. The combination with an electron discharge device having a cathode, an anode and a grid, of an external circuit connecting the cathode and grid and having intercalated therein means for impressing upon said grid an actuating potential from an external source, a second external circuit connecting said cathode and anode, a common portion of said circuits having two branches constituting a series loop circuit, and a resistance and a capacitance respectively in said branches, said loop circuit serving to oppose variations in the anode current or potential.

"Count 5. In a circuit including a vacuum

tube comprising a cathode, a grid and an anode, connections for energizing the said elements, a portion of said connections being common, means in said common portion for opposing oscillations due to electrical interaction comprising a loop circuit containing resistance and capacity, the reactance of the former being greatly in excess of that of the latter at operating frequencies.

"Count 6. The combination with an electron discharge device having a cathode, an anode, and a grid of an external circuit connecting the cathode and grid and having therein means to impress upon said grid an actuating potential from an external source, a second external circuit connecting said cathode and anode and including an indicating device and having a portion in common with said first circuit, and an aperiodic loop circuit in series with the common portion of said circuits whereby low frequency variations in the anode current are opposed."

The Examiner of Interferences gave to Heising the benefit of the filing date of his serial application, 327,744, of October 1, 1919, holding, after detailed discussion of the counts, that the subject-matter thereof was disclosed in each of his three applications and that there had been continuity in the prosecution thereof.

The decision of the Board of Appeals, among other things, said:

"Both parties have taken testimony. The examiner held Heising has established that he actually reduced the invention to practice at least as early as March 26, 1919, and again prior to June 5, 1919. These dates are prior to any date alleged by Robinson.

"The Heising proofs are deemed to clearly and conclusively establish these dates for reduction to practice. They have been carefully and fully treated in the examiner's decision and repetition herein is not considered necessary. Suffice it to say that we are in full accord with the examiner's holdings as to Heising's prior conception and reduction to practice, and for the reasons stated by the examiner in his decision."

With the foregoing statement we are in entire agreement. It is, in fact, not seriously contested by appellant. The decision of the Examiner of Interferences states: "At the hearing the attorney for Robinson admitted that the counts would read on Figure 2 of Heising application 72,229 involved herein."

Some question seems to be made by appellant as to disclosure by Heising of any one-tube feature, but we perceive no error in the statement of the Examiner of Interferences that: " * * * The counts are not limited as to the number of tubes involved. If resistance 13 and condenser 14 smooth out the ripples in the plate current of two tubes they certainly must smooth out the ripples in the plate current of a single tube. The function is inherent in a loop circuit of the type under consideration and the number of tubes is immaterial. * * *"

The gravamen of appellant's contention is, to quote from his brief, that: "Heising delayed from 1921 to 1924 to present the divisional application, while the device was in public use, and no commensurate claims were pending, and throughout a period when no claims to a combination of the resistance and condenser with one or even two tubes of differing characteristics had ever been presented to the Patent Office."

As a result of the alleged delay and public use, appellant insists, in substance, that Heising lost whatever rights he may have been entitled to, and cites various cases, including Chapman et al. v. Wintroath, 252 U. S. 126, 40 S. Ct. 234, 64 L. Ed. 491; Webster Electric Co. v. Splitdorf Electric Co., 264 U. S. 463, 44 S. Ct. 342, 344, 68 L. Ed. 792; Westinghouse v. Jeffrey (C. C. A.) 22 F.(2d) 277; American Laundry Co. v. Prosperity Co. (C. C. A.) 295 F. 819; and Dwight v. Greenawalt (C. C. A.) 27 F.(2d) 823.

Appellant's brief further says: "If there is constructive reduction in Ser. No. 753,029, a delay of five years from 1919 to 1924 occurred between the alleged actual reduction and the filing of this application; and the invention comes clearly under the doctrine of Mason v. Hepburn, 13 App. D. C. 86. Work on and the filing of applications on other inventions does not prove due diligence."

None of the cited authorities appears to us to be controlling in appellant's favor, under the facts of the case before us, as said facts were found by the tribunals of the Patent Office in which findings we concur.

Disclosure being found in Heising's applications of October 1, 1919, and December 1, 1924, respectively, and in his application of November 30, 1925 (the application which resulted in the interference and which is found to be a continuation of the prior applications as to the subject-matter at issue), his subsequent copying of the claims, which constitute the counts, from the Robinson patent, not issued until six months thereafter, appears to have been seasonable.

In the Webster Co. Case, supra, the Supreme Court of the United States held that a party who had waited more than eight years after filing his original application and five years after the grant of a patent to another disclosing the subject-matter, and three years after the beginning of an infringement suit, to file a divisional application specifically claiming the said subject-matter, was guilty of such laches as would bar his right to copy said claims for the purpose of interference.

In said Webster Co. Case, many other cases relating to both reissue applications and the copying of claims for interference, were cited and reviewed, among them the noted case of Chapman v. Wintroath, supra.

The Supreme Court was careful to state in the Webster Case that no "hard and fast time limit" of two years in the case of every divisional application had been established, but did say that under the facts of that case there had been laches which was fatal to applicant's cause, and the concluding paragraph of the opinion reads: "Our conclusion, therefore, is that in cases involving laches, equitable estoppel or intervening private or public rights, the two-year time limit prima facie applies to divisional applications and can only be avoided by proof of special circumstances justifying a longer delay. In other words, we follow in that respect the analogy furnished by the patent reissue cases."

The foregoing doctrine would be applicable to the case at bar only in the event Heising were remitted solely to his application of October 1, 1919, because, even if given the benefit of his application of December 1, 1924, that date would be just eighteen months prior to the issuance of the Robinson patent on June 1, 1926.

In the Chapman v. Wintroath Case, supra, the Supreme Court, after referring to section 4886, R. S., as amended March 3, 1897, c. 391, 29 Stat. 692, and sections 4887, 4897, and 4920, R. S. (35 USCA §§ 31, 32, 38, 69), said (252 U. S. 136, 40 S. Ct. 234, 236, 64 L. Ed. 491): "Thus through all of these statutes runs the time limit of two years for the filing of an application, there is no modification in any of them of the like provision in R. S. § 4886, as amended, and no distinction is made between an original and a later or a divisional application, with respect to this filing right."

That court further said (page 137 of 252 U. S., 40 S. Ct. 234, 236, 64 L. Ed. 491): "* * * not only have later or divisional applications not been dealt with in a hostile spirit by the courts, but, on the contrary, designed as they are to secure the patent to the first discoverer, they have been favored to the extent that where an invention clearly disclosed in an application, as in this case, is not claimed therein but is subsequently claimed in another application, the original will be deemed a constructive reduction of the invention to practice and the later one will be given the filing date of the earlier, with all of its priority of right. Smith & Griggs Manufacturing Co. v. Sprague, 123 U. S. 249, 250, 8 S. Ct. 122, 31 L. Ed. 141; Von Recklinghausen v. Dempster, 34 App. D. C. 474, 476, 477."

The concluding sentence of the Chapman v. Wintroath opinion is (page 139 of 252 U. S., 40 S. Ct. 234, 237, 64 L. Ed. 491): "While not intending to intimate that there may not be abandonment which might bar an application within the two-year period allowed for filing, yet upon this discussion of the statutes and decisions, we cannot doubt that upon the case disclosed in this record, the Chapmans were within their legal rights in filing their divisional application at any time within two years after the publication of the Wintroath patent, and therefore the judgment of the Court of Appeals must be reversed."

Our attention has not been directed to any case in which the time for filing a divisional application for the purpose of interference has been limited by the decision of any court to less than two years from the issuance of the patent with which the interference was sought, and we do not feel justified, under the facts of this case, in fixing a shorter limit here.

So far as the element of public use is concerned, as is said in the brief filed in behalf of Heising: "There is no suggestion in the record that Robinson put it into public use. * * *"

Even if, as contended by Robinson, Heising, or his assignee, put it into public use two years before December 1, 1924, that would not, under the facts of this case, affect Heising's rights in the interference. We find no evidence of abandonment or concealment which makes the doctrine of Mason v. Hepburn, supra, applicable.

The decision of the Board of Appeals is affirmed.

Affirmed.