## WRITER v. KIWAD.
### Patent Appeal No. 3051.

Court of Customs and Patent Appeals.
Feb. 20, 1933.

Lee B. Kemon, of Washington, D. C. (Wm. Houston Kenyon and W. Houston Kenyon, Jr., both of New York City, of counsel), for appellant.

O. Ellery Edwards, of New York City, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of invention to appellee.

The interference is between appellee's application, No. 412,801, filed December 9, 1929, an alleged division of his parent application, No. 111,017, filed May 22, 1926, and appellant's patent, No. 1,725,500, in which the count originated, issued August 20, 1929, on an application filed November 23, 1928.

The count reads: "The method of producing tam-o'-shanters or the like from a sheet of material, comprising the steps of folding the outer portions of the material inwardly toward its center and holding the marginal edge of the folded material against contraction, pulling the free inner end of the material inwardly from the marginal edge, and subjecting the folded material to the action of pressure in the presence of heat and moisture."

Appellant was restricted by his preliminary statement to April 18, 1928, for conception of the invention, and, as that date was subsequent to the filing date of appellee's parent application, No. 111,017 notice was given by the Examiner of Interferences that judgment on the record would be entered against appellant, unless cause was shown why such action should not be taken. Thereupon, counsel for appellant moved to shift the burden of proof on the ground that appellee was not entitled to the benefit of the filing date—May 22, 1926—of his parent application for constructive reduction to practice. The motion was based upon two propositions: First, that the original or parent application did not disclose the invention defined by the count in issue; second, that, if

the parent application did disclose the invention when it was originally filed, such disclosure was canceled (pursuant to instructions of Patent Office officials) by appellee on December 8, 1927, and, as his alleged divisional application was not filed until after appellant filed his application and a patent was issued thereon, during which period of time, it is alleged, appellee had no application pending in the Patent Office, either disclosing or claiming the involved invention, it should be held, in view of the intervening rights of appellant, that appellee abandoned the involved invention, and that, therefore, he should be limited to the filing date—December 9, 1929—of his alleged divisional application for constructive reduction to practice.

Counsel for appellant also moved to dissolve the interference on the ground that appellee had no right to make the claim constituting the count in issue.

Both motions were denied by the Examiner of Interferences, and priority of invention was awarded to appellee.

On appeal, the Board of Appeals affirmed the decision of the Examiner of Interferences.

Appellee's original application, filed May 22, 1926, disclosed two structures designed to be used for shaping and blocking full-crown, and flat-crown, turban hats.

One of those structures was provided with a hollow die of the desired shape, in which the hat material was positioned, and a "rubber or other yieldable sack," so designed that, when lowered into the die and "inflated with air or liquid under pressure," it conformed to the shape of the die, pressed, and, with the aid of heat and moisture, shaped the hat material.

The other structure was referred to in the original specification as "a modified form of die or blocking construction showing the use of a [heavy] central shaping core or block [of metal or other suitable material]," provided with pins at its upper end, a blocking ring, preferably of rubber, so shaped that it would give the turban edge effect to the material when it was blocked thereover, a shaping ring or die provided with two depending flanges, and a steam chamber having an upper surface or plate in which there is a central depression, conforming to the crown of a hat. The upper surface or plate of the steam chamber is provided with perforations to permit the passage of steam to the hat material. In operation, the hat material is placed over the plate or upper surface of the steam chamber, the blocking ring is placed over the hat

material, and the shaping core or block is so positioned inside the blocking ring that it rests upon that portion of the hat material lying in the depression in the plate. The hat material is then drawn up over the top of the shaping core or block, where it is securely held in position by the pins. The shaping ring, preferably heated, is then lowered upon the material with such force as may be necessary, and its depending flanges, due to their position and shape, exert pressure on the material and draw it into blocked position.

Division having been required by the examiner, all claims to the "modified form of die or blocking" structure, the one here involved, were canceled by appellee on January 6, 1927. On December 8, 1927, pursuant to the requirements of the examiner, appellee cancelled the drawings and descriptive matter relating to that structure.

Appellant's device consists, generally, of a recessed lower die, an upper die, having a central aperture and adapted to fit into the recess of the lower die, and a shaping element, so constructed that, when the hat material is folded over it, it forms the marginal edge of the hat and holds it against contraction. In operation, the shaping element, with wetted hat material folded over it, is placed in the recess of the lower die, the upper die is placed over the shaping element so that the hat material is positioned between the two dies, the free inner end of the material is pulled inwardly from the marginal edge and through the aperture in the upper die, and the upper die, heated, is then pressed downwardly against the material, shaping and blocking it.

In his decision denying the motion to dissolve the interference, the Examiner of Interferences stated that, in view of the fact that appellant made no attempt to explain why appellee could not make the count in issue, "a detailed application of the count" to appellee's structure was considered unnecessary, and that the count was a very broad one and appeared to be clearly readable on appellee's disclosure.

In its decision, the Board of Appeals stated that appellant contended that appellee could not make the claim constituting the count in issue, for the reason that appellee's specification referred to hat material in the form of a cone, and did not suggest that a *flat* sheet of material could be used in the operation of his device. The board concluded that the language in the count, "sheet of material," was not limited to flat sheets; that there was nothing in the specifications of the parties to indicate that either intended to use *flat* sheets of material; and that the language of the count was sufficiently broad to read on the "conical sheet material" disclosed by appellee.

Although it is not argued in the brief of counsel for appellant in this court that the board erred in holding that the count is not limited to a flat sheet of material, it may, nevertheless, be observed that, although appellee in his parent application referred to cone-shaped hat material, with reference particularly to his so-called inflated bag structure, not here involved, he referred merely to "hat material" in his disclosure of the structure now under consideration.

■ We agree with the views expressed by the Board of Appeals that the claim constituting the count in issue is not limited to a flat sheet of material, and that such a limitation ought not to be read into it.

Appellant here contends that appellee's device does not shape and block hat material by a molding or ironing pressure, as does appellant's device, but that, on the contrary, it subjects the material "to the *action* of stretching in the presence of steam," whereas, the method defined in the count in issue requires that the folded hat material be subjected "to the action of pressure in the presence of heat and moisture." (Italics ours.)

It may be, as argued by counsel for appellant, that appellee's device does not subject the hat material to a molding or ironing pressure. However, there is nothing in the language of the count to indicate that the involved method was intended to be limited to any particular kind or degree of pressure. The count provides broadly that the folded hat material be subjected to the *action* of pressure in the presence of heat and moisture. In this connection, it may be said that counsel for appellant, in describing the operation of appellee's structure, states in his brief that the shaping ring or die with its depending flanges "is caused to descend, the inner flange * * * contacting with the hat material first and forcing that material down to substantially the shape shown in Fig. 4 (Rec., p. 14B)."

It is true that the pressure exerted by the depending flanges of the shaping ring, in appellee's device, is for the purpose of drawing or stretching the hat material into blocked position. However, in the normal operation of appellee's device, the folded hat material is subjected to the action of pressure in the presence of heat and moisture, and, if for any reason the depending flanges failed to apply

pressure to the folded material, the device would be inoperable.

Counsel for appellant has called our attention to the decision of the Circuit Court of Appeals, Second Circuit, in the case of Anderson & Writer Corporation v. Hanky Beret, Inc., et al., 57 F.(2d) 167, 170, wherein it was held that neither the device disclosed in the patent to Kiwad, No. 1,530,001, issued March 17, 1925, nor the one disclosed in his divisional application, No. 412,801, here involved, anticipated appellant's patent, No. 1,725,500.

The Kiwad patent, No. 1,530,001, is not before us, and we are not familiar with its subject-matter.

With reference to that patent, however, the Circuit Court of Appeals, among other things, said: "As was pointed out in our previous opinion, supra [40 F.(2d) 196], Kiwad did not iron the material. Except for that he did show the salient features of the patent in suit. True, the machine of Kiwad had to be changed somewhat to make a beret instead of a hat but really in ways most obvious to a skillful mechanic. Yet when so changed Kiwad would not press the material and so dry it between heated dies."

In holding that the device disclosed in appellee's divisional application, No. 412,801, filed December 9, 1929, did not anticipate the structure disclosed in appellant's patent, the Circuit Court of Appeals, in discussing the Kiwad divisional application, among other things, said: "He does not iron wrinkles out, but steams and stretches to keep them out. The pressure he mentions is pressure secured by inflating a collapsible form which presses against and stretches the material out to the die or is pressure against rubber."

As we understand the device involved in appellee's divisional application, No. 412,801, it relates to appellee's modified form of die or blocking construction, hereinbefore described, and not to a structure which utilizes pressure by "inflating a collapsible form which presses against and stretches the material out to the die." The latter structure was not, as we understand it, divided out of appellee's 1926 parent application, No. 111,017. But, however that may be, the court had before it, in the Anderson & Writer Corporation Case, supra, in addition to the method claim now before this court, four apparatus claims of appellant's patent relating specifically to appellant's structure. Furthermore, the issue before that court was one of infringement; whereas, the issue before us is one of priority involving the application of principles of law somewhat different from those applied in infringement cases.

Should appellant's patent claim No. 7 be limited by a court of equity to a molding or ironing pressure, for the purpose of giving it validity, it might not be anticipated by the structure disclosed in appellee's divisional application. However, in interference cases, if the counts are not ambiguous, they should be given the broadest interpretation which they will reasonably support, and a party who deliberately elects to claim his invention broadly is not in a position to insist that limitations be read into them for the purpose of avoiding the issue of priority. Deibel v. Heise & Schumacher, 46 F.(2d) 570, 18 C. C. P. A. 907; Moore v. Greene, 48 F.(2d) 960, 18 C. C. P. A. 1317; Sweetland v. Cole, 53 F.(2d) 709, 19 C. C. P. A. 751.

The language of the count "subjecting the folded material to the action of pressure in the presence of heat and moisture" is very broad, no doubt deliberately so, and is no more ambiguous than other simple but broad language. To hold that such language is ambiguous would amount to the pronouncement of the untenable doctrine that, in interference cases, when necessary for the purpose of avoiding the issue of priority, all broad claims should be narrowly construed and limited.

We are of opinion that the involved count is sufficiently broad to read on appellee's disclosure, and that, therefore, appellee has a right to make it.

The second question requiring our consideration is whether appellee's involved application, No. 412,801, filed December 9, 1929, is a proper division of his parent application, No. 111,017, filed May 22, 1926. If it is, appellee is entitled to the filing date of his parent application for constructive reduction to practice. If it is not, he must be restricted to the filing date—December 9, 1929—of his involved application.

It appears from the record that appellee not only disclosed, but claimed, the invention defined by the involved count in his parent application, filed May 22, 1926; that, pursuant to a "requirement of division," he canceled the claims on January 6, 1927, and the drawings and descriptive matter on December 8, 1927; that appellant's application was filed November 23, 1928, and matured into patent on August 20, 1929; that appellee delayed the filing of his alleged divisional application until December 9, 1929, shortly after his attention was called to the Writer patent; that this interference was declared by the Patent Office on March 18, 1930; and

that appellee's parent application, involving the inflatable bag arrangement, matured into patent on October 1, 1930. Accordingly, appellee's alleged divisional application and his parent application were copending from December 9, 1929, to October 1, 1930, when a patent was issued on his parent application.

It is contended, in substance, by counsel for appellant that, by canceling the claims, the drawings, and all descriptive matter relating to the involved invention, appellee elected to prosecute the claims to the inflatable bag arrangement in the 1926 application, and, having failed to file a divisional application for a long period of time thereafter, approximately two years, during which period appellant filed his application and received a patent for the invention, it should be held, as a matter of law, that, so far as his 1926 application is concerned, appellee abandoned the involved invention. Counsel for appellant further contends that, by canceling the claims, drawings, and descriptive matter of the involved invention from the 1926 application, appellee deliberately withdrew the invention from the Patent office; that, thereafter, there was no disclosure of the involved invention in the 1926 application upon which a divisional application could be based; and that, therefore, appellee is not entitled to the filing date of his 1926 application for a constructive reduction to practice. In support of his contentions, counsel for appellant has cited many cases. He relies chiefly, however, on the following: Carty v. Kellogg, 7 App. D. C. 542; Hien v. Pungs, 1894 C. D. 92; Hayes-Young Tie Plate Co. v. St. Louis Transit Co. (C. C. A.) 137 F. 80; Wainwright v. Parker, 32 App. D. C. 431; Fessenden v. Wilson & Schafer, 48 F.(2d) 422, 18 C. C. P. A. 1171.

In each of the first three above-cited cases, namely, Carty v. Kellogg, Hien v. Pungs and Hayes-Young Tie Plate Co. v. St. Louis Transit Co., supra, it was held that, by abandoning an application for a patent, the continuity of the prosecution of its subject-matter is destroyed, and that, therefore, a subsequent application is a new proceeding, not a continuance of the first; and that, under such circumstances, an applicant is limited to the filing date of his subsequent application for constructive reduction to practice.

In the case of Carty v. Kellogg, supra, the court said: "The lapse of the application—its legal abandonment—was worked by the express command of the statute and cannot be relieved against in any other way than by a direct proceeding for the purpose. The statute provides that for failure to prosecute a claim within two years after any action therein, of which notice has been given, it shall be regarded as abandoned 'unless it be shown to the satisfaction of the Commissioner of Patents that such delay was unavoidable.' R. S., sec. 4894; Rule 172, Patent Office."

In the case of Wainwright v. Parker, supra, a different situation prevailed. It there appeared that appellant, Wainwright, filed an application on March 8, 1900, disclosing and claiming, among other species, the invention involved in that interference. After repeated rejections by the Primary Examiner, the application, as stated by the court, "was limited, without appeal, to one of the species, *and the drawings, specification, and claims were so amended as to eliminate all reference to the device involved in this interference. In this condition the application was allowed and went to patent on May 5, 1903.*" (Italics ours.) Thereafter, on January 21, 1907, appellant filed the application involved in that case. The court held that the second application should be regarded, "not as a renewal, but as in the nature of a divisional application," and should be governed by the law applicable thereto; that, as the original application matured into a patent prior to the filing of the second application, there was nothing pending in the Patent Office to which the latter application could relate or attach; and that, therefore, appellant was not entitled to the filing date—March 8, 1900—of his original application for constructive reduction to practice.

A somewhat similar situation was presented in the case of In re Spitteler, 31 App. D. C. 271. The court there stated that, so long as an application which disclosed two inventions was pending in the Patent Office, a divisional application claiming one of those inventions was to be regarded as a continuation of the original application, and that the applicant, in such cases, was entitled to the filing date of his original application for constructive reduction to practice. The court further held, however, that where the original application matured into patent prior to the filing of an alleged divisional application, the latter was not a continuance of the first. See, also, Conover v. Downs, 35 F.(2d) 59, 17 C. C. P. A. 587.

In the case of Fessenden v. Wilson & Schafer, supra, it appeared that appellant, Fessenden, filed an application in 1915 disclosing several inventions. All reference to the invention involved in that case was canceled in 1916, and, as amended and limited,

the original application matured into a patent in 1918. Thereafter, January 23, 1922, appellant filed an alleged divisional application, claiming the invention there in issue. It will be observed that the original and the divisional applications were not at any time copending. On that state of facts, the court held that, so far as constructive reduction to practice was concerned, appellant had abandoned the involved invention, and was, therefore, not entitled to the filing date of his original application.

In the case at bar there is no evidence whatsoever that appellee expressly or impliedly abandoned the involved invention. See Chapman v. Wintroath, 252 U. S. 126, 40 S. Ct. 234, 64 L. Ed. 491. It is true that the claims, drawings, and descriptive matter were canceled from the original application by appellee pursuant to a requirement of division. They were not canceled, however, due to any holding by the Patent Office that either the claims or the subject-matter were devoid of invention. Nor is it proper to say that, as a result of such cancellation, there was no disclosure of the involved invention in the 1926 application upon which a divisional application could be based. By acquiescing in the requirement of division, appellee merely elected to prosecute claims to the "inflatable bag arrangement" in the parent application, and the amendment canceling the claims, drawings, and descriptive matter relating to the involved invention was not intended to be effective for any other purpose. The disclosure was not physically withdrawn, but remained legible in that application.

It appears from the record that the claims to the "inflatable bag arrangement" in the parent (1926) application were not allowed until April 3, 1930, approximately four months after the filing of the divisional aplication (December 9, 1929). Furthermore, the claim constituting the count here in issue had not only been found to be allowable, but had been allowed, to appellant several months prior to the filing of appellee's divisional application.

In view of the facts of record, appellee, for interference purposes, might properly have been permitted to withdraw the amendment canceling the drawings and descriptive matter, and to present the claim constituting the count in issue, and other claims to the involved invention (previously found to be allowable), in his 1926 application. Ex parte Priebe, 1915 C. D. 39, 221 O. G. 351; Ex parte Stimson, 1916 C. D. 20, 226 O. G. 699.

There is no statutory provision, nor Patent Office rule, limiting the time in which a divisional application may be filed in order that it may constitute a continuance of a pending, not abandoned, parent application, which discloses the invention claimed in the divisional application. Duryea v. Rice, 28 App. D. C. 423, 434; Robinson v. Heising, 55 F.(2d) 472, 19 C. C. P. A. 895; Chapman v. Wintroath, supra. Furthermore, *under the circumstances of this case,* mere delay in the filing of a divisional application is not evidence of abandonment of an invention. Chapman v. Wintroath, supra.

For the reasons herein assigned, we are of opinion that appellee is entitled to the filing date of his parent application—May 22, 1926—for constructive reduction to practice, and that the Patent Office tribunals were right in holding that he was entitled to an award of priority.

The decision of the Board of Appeals is affirmed.

Affirmed.