## CHAPMAN v. BEEDE.

(Court of Appeals of District of Columbia. Submitted January 18, 1924. Decided March 3, 1924. Rehearing Denied March 22, 1924.)

### No. 1636.

**1. Patents ⊂⇒51(1), 66, 70, 80—When inventor loses right to patent on invention.**

Under Rev. St. § 4886 (Comp. St. § 9430), an inventor loses the right to a patent on his invention, if it has been known or used by others in this country before his invention, or if patented or described in any printed publication in this or any foreign country before his invention, or more than two years prior to his application, and if in public use or on sale in this country for more than two years prior to his application.

**2. Patents ⊂⇒107—Inventor, permitting two years to elapse after issuance of patent to another, dedicates invention to public.**

Where an inventor files an application, disclosing an invention not embraced in his claims, and allows two years to elapse after the issuance of a patent to another, embracing the matter not so claimed, he in effect dedicates his invention to the public.

**3. Patents ⊂⇒106(1)—Senior applicant entitled to have priority determined, notwithstanding failure to copy junior applicant's claims within two years from issuance of patent.**

Where an earlier application disclosed and claimed the same invention covered by the claims of the issue of a patent to a junior applicant, under the provisions of Rev. St. § 4904 (Comp. St. § 9449), an interference should have been declared by the Patent Office while the junior application was pending, and the failure of that office to declare an interference will not deprive senior applicant of the opportunity of having the question of priority determined, in view of the equitable principle

that courts view as done what ought to have been done, notwithstanding senior applicant's failure to copy junior applicant's claims within two years from the issuance of patent to junior applicant.

4. **Patents ☞72—Junior applicant's patent for mounting spindles substantially same as that disclosed by senior application.**

An invention providing a means for mounting spindles of the floating or flexible type disclosed in the senior application *held* substantially the same, and not patentably different from the invention claimed in the junior application.

Appeal from the Commissioner of Patents.

Interference proceeding between Fred H. Chapman and Herbert C. Beede. From a decision awarding priority to the last-named party, the first-named party appeals. Affirmed.

William S. Hodges, of Washington, D. C., for appellant.

Robert Cushman, of Boston, Mass., and A. V. Cushman, of Washington, D. C., for appellee.

Before ROBB and VAN ORSDEL, Associate Justices, and SMITH, Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. Appeal from a decision of the Patent Office in an interference proceeding in which priority of invention was awarded the party Beede. The issue is expressed in 12 counts, of which the first, fifth, and eleventh are sufficiently illustrative:

"1. The combination of a spindle, a supporting base, a ball bearing supported by said base and supporting said spindle, and an element connected with the spindle adapted to receive a driving band and arranged in the same plane with said ball bearing, the step or foot of the spindle being capable of lateral cushioned movement."

"5. A spindle comprising in combination, a blade, a ball bearing surrounding and supporting said blade, the outer member of said bearing being a sleeve rising above the bearing and providing an oil chamber, and a supply tube for oil entering said chamber and having its external orifice above the ball bearing, whereby to maintain the bearing submerged in oil."

"11. A spindle comprising a base having a depending socket portion closed at its lower end, a blade contained in said socket portion and rising from the base, and a ball bearing supporting said blade, and located above the lower end of the blade; said lower end being constructed of smaller diameter than the interior of said socket portion and being movable laterally therein to bring the center of gravity and rotational axis of the spindle into coincidence."

Beede's application was filed November 6, 1914. Chapman filed November 27, 1916, and his patent was issued January 15, 1918. On December 20, 1920, almost three years after the issuance of the Chapman patent, Beede copied the claims of the issue.

In Rowntree v. Sloan, 45 App. D. C. 207, and Wintroath v. Chapman, 47 App. D. C. 428, we ruled that, where an earlier application discloses, but *does not claim*, an invention which conflicts with that of the later unexpired patent, the earlier applicant, within one year from the date of the patent, may make the conflicting claims in a second application, for the purpose of having determined the question of priority of invention. This ruling was based upon the supposed analogy to the time (one year) allowed by section 4894, R. S. (Comp. St. § 9438), for amendment of applications. The later case was reviewed

by the Supreme Court of the United States (Chapman v. Wintroath, 252 U. S. 126, 40 Sup. Ct. 234, 64 L. Ed. 491), and that court, after analyzing sections 4886, 4887, 4897, and 4920, R. S. (Comp. St. §§ 9430, 9431, 9443, 9466), directed attention to the fact that through these statutes runs the time limit of two years for filing an application, and said:

"While not intending to intimate that there may not be abandonment which might bar an application within the two-year period allowed for filing, yet upon this discussion of the statutes and decisions, we cannot doubt that, upon the case disclosed in this record, the Chapmans were within their legal rights in filing their divisional application at any time within two years after the publication of the Wintroath patent."

In other words, the Supreme Court extended the time limit to two years. Wells v. Honigmann, 50 App. D. C. 99, 267 Fed. 743; Replogle v. Kirby, 50 App. D. C. 210, 269 Fed. 862; Wahl v. Main, 51 App. D. C. 398, 280 Fed. 974; Splitdorf Electrical Co. v. Webster Electric Co. (C. C. A.) 283 Fed. 83, 93.

[1] Under section 4886, R. S., an inventor loses the right to a patent on his invention if it has been known or used by others in this country before his invention, if patented or described in any printed publication in this or any foreign country before his invention "or more than two years prior to his application," and if "in public use or on sale in this country for more than two years prior to his application." While no time is prescribed in section 4916 within which an application for reissue must be filed, the Supreme Court, by analogy to the time of public use, has fixed the time within which an application carrying broader claims must be filed as two years. Mahn v. Harwood, 112 U. S. 354, 5 Sup. Ct. 174, 6 Sup. Ct. 451, 28 L. Ed. 665.

[2] It is apparent, therefore, that the underlying principle of the decision in the Chapman-Wintroath Case is that, where an inventor files an application disclosing an invention not embraced in his claims, and allows two years to elapse after the issuance of a patent to another embracing the matter not so claimed, he in effect has dedicated such invention to the public. When the prior application matures into a patent, it will be notice to the public of what it discloses, and, should it appear, in a suit upon the prior patent, that the patentee there was not the original inventor, of course his patent would be invalid, and the public would reap the benefit. To permit a party, who discloses, but does not claim, interfering subject-matter, to file a second application years after the issuance of a patent to another, would, in the event of a judgment of priority in his favor, prolong the monopoly granted by the statute, and thus frustrate its object. This would encourage delay, because, by dilatory tactics, an application might be kept alive in the Patent Office until the invention was successfully exploited. There is every reason, therefore, why the two-year rule should be rigidly adhered to in such a situation.

[3] It is contended, however, that the present case differs from other cases heretofore determined, in that the earlier application of Beede not only disclosed, but claimed, the subject-matter of the present interference, at a time anterior to the filing of the Chapman application. In other words, the contention is that, when the Chapman application

was filed, there was pending in the Patent Office an application disclosing and claiming the subject-matter of the present claims. Assuming, for the moment, that the earlier application did disclose and claim *the same invention* covered by the claims of the issue, it is apparent that under the provisions of section 4904, R. S. (Comp. St. § 9449), an interference should have been declared by the Patent Office while the Chapman application was there pending, and that the failure of the Office in this respect prevented an orderly determination of the question of priority of invention between these two parties. The issuance of a patent to Chapman was an inadvertence, in no way chargeable to Beede. If an interference is not now sustainable, Beede's patent later will issue in due course, with claims commensurate with and anticipating the claims in the Chapman patent, and the courts will be deprived of the assistance of the Patent Office in the determination of the question of priority. It follows, therefore, that Beede's failure to copy these claims within two years from the issuance of the Chapman patent could result in no prejudice to the public, because, irrespective of this interference, his earlier application would have matured into a patent carrying claims of the same scope. An application of the equitable principle or maxim that courts view as done what ought to have been done, demonstrates that Beede, in the circumstances of this case, should not be deprived of an opportunity to have the question of priority determined. We therefore will proceed to determine whether his earlier application disclosed and claimed the subject-matter of the Chapman application.

[4] When this interference was declared, Chapman filed a motion to dissolve, on the ground that Beede's application did not disclose the subject-matter of the claims of the issue. A hearing was had before the Law Examiner, who ruled adversely to Chapman's contention. While the question whether there were counts in the original application as broad as the counts of the issue was not directly raised, the interpretation given the counts of the issue was such as to have supported a ruling to that effect. The Examiner of Interferences did not discuss this question, nor did the Board of Examiners in Chief. The Assistant Commissioner, however, found that claims 2 and 3 of the Beede application, which were presented on November 6, 1914, or over two years prior to Chapman's filing date, are substantially the same as the claims of the issue.

A reading of the two specifications discloses that the object of the two parties was substantially the same. The effort of each was to provide improved means for mounting spindles of the floating or flexible type. Chapman says:

"My invention relates to spindles of the type which are employed in machines for spinning or twisting yarns, thread, etc., and more particularly to that species of spindle which is provided with a whorl driven by a band or tape from a rapidly rotating drum. Spindles of this type have long been known and widely used."

Beede's invention related to the same sort of spindle, and the specification of each party must be interpreted in the light of the prior art. That their drawings disclose substantially the same mechanism, accomplishing substantially the same result, we think plain. Therefore

Beede should not be deprived of the fruits of his earlier discovery, unless it appear that his claims, which were in his application when the Chapman patent was issued, were not commensurate with the invention covered by the Chapman patent. Chapman's contention that Beede's original claims were of a limited scope is based largely upon the assumption that these claims were restricted to a specific invention embodying a bolster, and hence that all other modes of supporting a ball-bearing spindle were dedicated to the public. We already have directed attention to the fact that, according to Chapman's specification, the invention related to a spindle of a well-known type. It is permissible and proper, therefore, to turn to the lexicographers in an effort to determine the meaning of the word "bolster," as used by Beede. The New Standard Dictionary describes it as:

"An upper bearing of a spindle, in its frame, as distinguished from the lower bearing or step."

Knight's Mechanical Dictionary defines the term as:

"The spindle bearing in the rail of a spinning frame which forms a sleeve bearing for the vertical spindle some distance above the lower bearing, which is called the step."

Century Dictionary refers to it as "a sleeve bearing through which a spindle passes," while Webster's New International Dictionary describes it as "the spindle bearing in the rail of a spinning frame."

Beede's original claim 2, which was allowed, reads as follows:

"2. In a device of the general character described, the combination of a stationary base, said base having its upper part enlarged transversely and provided with a longitudinal recess or chamber, a bolster having its upper portion in said recess, said portion of the bolster also being recessed, a spindle blade, a ball bearing located in the bolster recess and having members of said bearing engaging both the blade and the encircling wall of the bolster socket or recess, and a recessed whorl fixed to said blade, the relation of the said parts to one another being such that a plane cutting substantially through the center of the whorl transversely would also extend through the corresponding portions of said base, bolster, ball bearing and blade members."

It will be observed that the elements covered by this combination are a stationary base with an enlarged upper part, provided with a recess or chamber, a bolster in that recess, a spindle blade, a ball bearing located in the bolster recess, and the members of the ball bearing engaging both the blade and the encircling wall of the bolster socket or recess, and a recessed whorl so fixed to the blade as that a plane cutting substantially through the center of the wall passes through the ball bearing. It will be noted, further, that there is no limitation in this claim that the bolster must be of a particular type. In interpreting the claim, we therefore must assume that the general type of bolster known to the art was in mind; in other words, that Beede was claiming the bolster generically.

Original claim 3, also allowed Beede, differs from claim 2, in that it includes means for keeping the ball bearing submerged in a lubricant. That Beede did not intend to narrow the scope of his claims we have mentioned to the extent now urged by Chapman is further evident from the fact that original claim 1 was limited to a "movably supported" bolster. According to well-established canons of construc-

tion, the more general language employed in the two following claims is not to be thus restricted.

This is a question of substance and not of mere form. We are convinced, as was the Assistant Commissioner, whose reasoning we adopt, that, while Chapman designated as a "sleeve" the member characterized by Beede as a "bolster," the function of the two members was substantially the same. We therefore rule that the invention disclosed in the early Beede application, and claimed in the counts to which we have directed attention, was substantially the same, and not patentably different from the invention covered by the counts of the issue. It results that the decision awarding priority to Beede must be affirmed.

Affirmed.