**JENKS v. KNIGHT.**

**Patent Appeals No. 3845.**

Court of Customs and Patent Appeals.
June 7, 1937.

O. H. Eschholz, of East Pittsburgh, Pa. (W. R. Coley and G. M. Crawford, both of East Pittsburgh, Pa., and Raymond Jones, of Washington, D. C., of counsel), for appellant.

Saywell & Wesseler, of Cleveland, Ohio (William J. Wesseler, of Cleveland, Ohio, and Albert H. Kirchner, of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

The appellant, Jenks, has here appealed from a decision of the Board of Appeals of the United States Patent Office in an interference proceeding which affirmed the decision of the Examiner of Interferences in awarding priority to the appellee, Knight, in five counts defining an invention relating to electrical control systems for rolling mills.

Count 1 is illustrative and reads:

"1. In a control system for rolling mills provided with a plurality of rolls, in combination, a screw-down motor for adjusting the rolls, a limit switch, means for effecting the operation of said limit switch in accordance with the operation of the screw-down motor, means cooperative with the limit switch to effect the stopping of the screw-down motor in a plurality of predetermined positions, and means for variably controlling the distances between the respective positions."

The nature of the invention will be more fully explained in connection with the decision of one of the issues involved and hereinafter decided.

The counts 1, 2, 3, 4, and 5 were claims 1, 3, 4, 5, and 6 of the Jenks patent, copied by Knight in a reissue application. The earliest date alleged by the junior party Jenks for conception of invention defined by any of the counts is February 15, 1926. Knight's original application was filed February 11, 1925, over a year prior to Jenks' alleged conception date. Jenks was placed under an order to show cause why judgment on the record should not be rendered against him. In response to this order Jenks made a motion to dissolve on the ground that Knight was estopped to make the counts in his reissue application under the doctrine of Chapman and Chapman v. Wintroath, 252 U.S. 126, 40 S.Ct. 234, 64 L.Ed. 491, because he failed to copy the claims of the Jenks' patent within two years from the issuance of said patent (not upon the ground that Knight could not make the counts).

Jenks' filing date was December 13, 1927. The two applications, although relating to the same subject-matter, were copending in different divisions of the Patent Office. Jenks' patent No. 1,764,312, inadvertently issued on June 17, 1930. Seventeen months thereafter, November 17, 1931, Knight's patent No. 1,832,400, issued. Within the two-year period from the issuance of the Knight patent, Knight filed a reissue application. The filing date of the reissue application, July 25, 1933, was more than two years after the issuance of Jenks' patent (approximately three years).

Appellee had constructive notice of the issuance of Jenks' patent for a period of approximately three years before he filed his application for reissue, and it is conceded in the record that he had actual notice of the issuance of Jenks' patent seventeen months before he made any effort to copy the claims.

Jenks' motion to dissolve was not set for hearing because Knight, being unwilling to stand upon the record, desired to take testimony to show special circumstances excusing the delay in filing his reissue application. Only Knight took testimony.

The main question decided by the Examiner of Interferences and by the Board, and the main question presented here is whether or not Knight, under the circumstances, is estopped from claiming the invention defined by the counts, which were claims in the Jenks patent, on account of Knight's delay in copying the claims for more than two years after the issuance of the Jenks patent.

The Board stated that Jenks, upon his appeal there, did not ask for priority, but

asked for a dissolution of the interference on account of Knight being estopped by reason of laches. Knight, the Board stated, orally asked that the appeal be dismissed on the ground that the questions raised were not ancillary to priority but were matters for ex parte consideration.

In this court, the position of the appellant is somewhat difficult to understand. He seems to press only one question, this being that Knight is estopped from claiming the invention by virtue of the facts aforesaid, that the Board erred in awarding priority to Knight, and that its decision should be reversed. In oral argument it is stated by appellant that he concedes he is not the first inventor and that in any event he could not have a patent, but that he knows of no reason why he should not be awarded priority as against Knight. He freely admits that Knight is the first inventor in fact, and states that his (Jenks') patent is invalid.

Appellee in this court, before the hearing of the case, filed a motion to dismiss appellant's appeal or to affirm the decision of the Board of Appeals on the ground that Jenks does not ask for an award of priority and that a decision of priority in favor of appellant could not properly be made here for the reason that Jenks' alleged earliest date of conception upon the record and according to Jenks' admissions is subsequent to Knight's filing date. This motion we took with the case at the time of oral argument without ruling thereon.

Whether the motion should be sustained or not seems to us to depend upon the answer to the question as to whether or not the estoppel question presented is ancillary to the question of priority. It is the position of Knight that under decisions of this and other courts, and under the circumstances of this case, the estoppel question presented is not ancillary. The Board of Appeals went into this question quite thoroughly and held, in substance, citing and discussing Phelan v. Green, 71 F.(2d) 298, 21 C.C.P.A. (Patents) 1228, that the question was not ancillary to priority, but in view of this court's holding in said case it did not dismiss the appeal but awarded priority to Knight.

It is true that this court in Phelan v. Green, supra, held that since the estoppel there sought to be invoked did not operate in favor of the appellant, Phelan, it was not ancillary to the question of priority. Nevertheless, we there upon that record affirmed the decision of the Board in awarding priority to Green. The subject-matter of the Phelan v. Green Case, supra, which is of importance here is the holding that the question of estoppel there raised was not ancillary to the question of priority of invention. In that case there had been a three-party interference. One Mailey had been in the case and he disclosed the invention of the counts in his patent two years before appellee Green copied the claims. Mailey did not appeal from an award of priority against him. Phelan did and here urged that Green was estopped because of Mailey's early patent disclosure. This court held that while an estoppel might have existed against the appellee in favor of Mailey, there was none existing in favor of Phelan, and that for that reason the matter could not be ancillary to priority.

A different situation prevails in the case at bar. If there is any estoppel, it would operate in favor of Jenks and as far as this record shows, notwithstanding the admission of Jenks, if Knight was estopped from claiming the invention, Jenks might well be awarded priority. Under these circumstances, we hold that the question of estoppel presented is one ancillary to the question of priority and that we should review this part of the Board's decision. For the reasons stated, the motion to dismiss is denied.

On the merits of the case, since the decision of Chapman and Chapman v. Wintroath, supra, it has been the well-settled law that in an interference case where a party thereto copies the claims of an issued patent contending that he is the prior inventor who disclosed but failed to claim the invention, he should do so within two years of the issuance of the patent and if he waits longer he will, except under special circumstances, on account of laches, be estopped from claiming the invention. The reason for the rule grew out of the analogy to a situation in which a two-year public use was a bar to the granting of a second patent. Subsequent to the decision of that case, a number of other cases involving substantially the same question have been decided by the courts, most of which have been discussed in Phelan v. Green, supra, and need no extended discussion here. These cases show that there are exceptions to the rule.

The Board thought the facts in the present case did not warrant the application of the doctrine against Knight, although Knight had delayed nearly three years in copying the claims of the Jenks patent. The Board was persuaded that its decision was controlled for the most part by the rule laid down in Chapman v. Beede, 54 App.D.C. 209, 296 F. 956, 958, which was decided subsequently to Chapman and Chapman v. Wintroath, supra. In that case, Beede was the first inventor. He disclosed and claimed the invention. A patent was inadvertently issued to Chapman (who was the last to file) during the pendency of the Beede application. Beede copied the claims of the Chapman patent into his original application after more than two years had elapsed from the issuance of the Chapman patent. The decision of the Court of Appeals of the District of Columbia of this question is of such importance that we think it proper to quote extensively therefrom. The court said:

"It is contended, however, that the present case differs from other cases heretofore determined, in that the earlier application of Beede not only disclosed, but claimed, the subject-matter of the present interference, at a time anterior to the filing of the Chapman application. In other words, the contention is that, when the Chapman application was filed, there was pending in the Patent Office an application disclosing and claiming the subject-matter of the present claims. Assuming, for the moment, that the earlier application did disclose and claim the same invention covered by the claims of the issue, it is apparent that under the provisions of section 4904, R.S.(Comp.St. § 9449 [35 U.S.C.A. § 52]), an interference should have been declared by the Patent Office while the Chapman application was there pending, and that the failure of the Office in this respect prevented an orderly determination of the question of priority of invention between these two parties. The issuance of a patent to Chapman was an inadvertence, in no way chargeable to Beede. If an interference is not now sustainable, Beede's patent later will issue in due course, with claims commensurate with and anticipating the claims in the Chapman patent, and the courts will be deprived of the assistance of the Patent Office in the determination of the question of priority. It follows, therefore, that Beede's failure to copy these claims within two years from the issuance of the Chapman patent could result in no prejudice to the public, because, irrespective of this interference, his earlier application would have matured into a patent carrying claims of the same scope. An application of the equitable principle or maxim that courts view as done what ought to have been done demonstrates that Beede, in the circumstances of this case, should not be deprived of an opportunity to have the question of priority determined. We therefore will proceed to determine whether his earlier application disclosed and claimed the subject-matter of the Chapman application."

It will be observed that there an exception was made to the two-year rule. This was because of the fact that during all the time Chapman's application was pending, Beede was claiming the invention, that the issuance of the patent to Chapman was clearly an inadvertence, and that there was no delay on the part of Beede in claiming the invention since he had been claiming it from the beginning.

The Board in the instant case said:

"We agree with the examiner. We call special attention to claims 3 and 5 of the Knight patent No. 1,832,400 in which is set forth as a combination "a material modifying apparatus" and the intermittently operable electric motor with control mechanism for the motor to effect a certain change in the material modifying apparatus. The claims on appeal taken from the Jenks patent are more specific to a certain extent in being limited to a control system for rolling mills provided with a plurality of rolls but we note that Knight disclosed his control device as applied to rolling mills for positioning one of the rolls relative to the other. We have not been shown and do not consider the claims on appeal set forth a different invention from that expressed in the Knight patent claims as above noted. Certainly the Knight claims as to the mechanism in which the electric control is used are broader than the Jenks claims.

"The practice in this connection as laid down in Chapman v. Beede, 54 App.D.C. 209, 323 O.G. 230, 296 F. 956, is that a delay in copying the claims from a patent is excused where:

"'* * * the object of the two parties, as disclosed in their specifications, was the same, where substantially the same mechanism accomplishing substantially the

same result was disclosed in their drawings, and where the invention claimed in B.'s application more than two years prior to C.'s filing date was substantially the same as and not patentably different from the invention covered by the counts of the issue.'

"The Court in considering the situation as there presented, held that an interference should have been declared by the Patent Office while the patent applications were still pending and 'that the failure of the Office in this respect prevented an orderly determination of the question of priority of invention between these two parties.' That seems to be the situation here. The issue of the patent to Jenks was evidently an inadvertence and probably due to the fact that the Jenks application was handled by a different division of this Office than the Knight application. We are satisfied that Knight, under the Chapman v. Beede doctrine, is within his rights in copying the claims of the Jenks patent for the reasons stated."

The main difference between the two cases is that Beede at the time of copying the claims was not a patentee while Knight was. Assuming, for the purpose of the present discussion (the matter will be adverted to later), that Knight did claim broadly the invention of the counts during the prosecution of his application, which claims were presented and canceled, and assuming further that such cancellation was prompted by the presentation by the Examiner of some of the claims which broadly cover the invention here involved and are now in the Knight patent, do such facts constitute a basis for the avoidance of the rule announced in Chapman and Chapman v. Wintroath.

The facts present a situation which differs in some respects from that of any case which we have examined. Appellee claims, and the Board held, that during the pendency of his application he, Knight, was at all times claiming the invention here in issue and that the claims of the Knight patent, especially claims 3 and 5, are for the same invention as that here involved. So, the distinction between the Beede Case and this case is that in that case the estoppel was sought against an applicant who copied the claims in his original application without the necessity of the reissue of a patent, while in the instant case Knight claims the right to a reissue for the purpose of copying claims for an invention which he insists and the Board held is already covered by claims in his patent.

In addition to the contention that appellee was all the time claiming the invention here involved from long before the filing of appellant's application to the time of the issuance of the patent, the further contention is made that the record here shows satisfactory excuses why appellee should not be charged with laches in copying the claims. There is much testimony given concerning the appellee's alleged property. No such property is shown as would ordinarily excuse one where diligence or reasonably prompt action is required and we need not state or discuss all the facts here. The record, we think, shows that appellee was not in such poor financial condition as to warrant the conclusion that he could not have copied the claims within the two year period.

These facts, which appellee has proved with a view of offering an excuse for not sooner copying the claims, were evidently not regarded by the tribunals of the Patent Office as being of importance in the premises since they were not discussed by either. It was not necessary for Knight to present a state of facts for the purpose of showing that he did not purposely delay in order that he might extend his monopoly, since he already had a patent and the reissued one would bear the same date. Under these circumstances, and in view of our conclusion, we do not regard it as of importance here to further consider such facts as relate to his poverty, etc.

From the foregoing, it would seem obvious that the question is a novel one. In applying the doctrine akin to equitable estoppel announced in Mason v. Hepburn, 13 App.D.C. 86, attention has frequently been called to the fact that the doctrine was one not favored by the courts inasmuch as it prevents one from being permitted to assert the truth. Miller v. Hayman, 46 F.(2d) 188, 18 C.C.P.A. (Patents) 848; Severson v. Olson, 64 F.(2d) 694, 20 C.C.P.A.(Patents) 946. This court has steadfastly refused to extend the doctrine. The estoppel sought to be invoked in the case at bar is claimed to be a true equitable estoppel based upon laches. Nevertheless, its application has the same objectionable result as does the application of the said doctrine akin to equitable estoppel. But, notwithstanding this fact, in cases like

Chapman and Chapman v. Wintroath, supra, its application has met with the approval of the courts.

Now, in the case at bar we have assumed so far, for the purpose of discussing the application of the rule, that the record shows the facts as stated by the Board and the appellee. As hereinbefore pointed out, the facts of this case as stated by the Board are distinguishable from the facts in the Beede Case, supra, in some particulars. We are, however, of the opinion that the principles involved here and there are substantially the same. We think the decision in the Beede Case was sound. Under the circumstances shown there, it would have been a miscarriage of justice to have applied the doctrine of estoppel to Beede. For substantially the same reasons, assuming the holdings of the tribunals as to the facts in the case are correct, we are of the opinion that it would not be proper to hold that Knight is estopped from claiming the invention defined by the involved counts. The main consideration is that he did not delay in claiming the invention and therefore cannot be charged with laches. According to the findings of the tribunals, he not only had been claiming substantially the same invention during the time the Patent Office was considering the Jenks application, but broad claims for the same invention had already been awarded to him by the Patent Office in his issued patent.

It remains for us to determine whether or not the Patent Office tribunals are right in their conclusion that the record shows that during the period stated the appellee was claiming substantially the invention here involved and whether the Knight patent claims are for substantially the same invention.

Appellant frankly admits that he is not the first inventor, and concedes that appellee is such first inventor, and while he argues at considerable length that the Knight device and the Jenks device are wholly different and that the particular invention here involved is not the same invention defined by the claims of the Knight patent, he has not made it clear to us that the Examiner of Interferences and the Board were in error in their findings in this regard. Appellant points out that "at no time prior to the issuance of the Jenks patent on June 17, 1930 did the Knight application contain an allowed or an allowable claim," and that "All of these claims were rejected by the Examiner on various grounds, as on the art of record, as being unwarranted by the disclosure and as being inaccurate, obscure and indefinite." It is also shown in the record that the rejection at times was based on the multiplicity of claims.

The subject-matter of the claims involves a highly technical matter. Appellant argues that the invention involved here and the invention defined by the claims of the Knight patent differ in a number of particulars, one of the chief differences being that the Knight system is so arranged that it will function:

"* * * only to effect successive progressive movements of the mill roll 0 in one direction in response to successive operations of the push button 42 and that both progressive and retrogressive movements of the mill roll cannot be effected in the same cycle of movements. Such results from the fact that the 'dead' or stop points are all established and that it is necessary to operate the knife switch K to reverse the direction of operation of the screw-down motor."

Other contentions are made which need not be stated here.

The rule relating to concurring decisions of the Patent Office tribunals which involve highly technical matters is too familiar to require discussion here. See Daley v. Trube (Daley v. Loftin) 88 F.(2d) 308, 24 C.C.P.A. (Patents) ——.

On the phase of the case last above described the Examiner said:

"A comparison of claims 1–5 of the Knight patent with the counts in issue shows very clearly that the two sets of claims are drawn to the same subject matter and invention. While the counts in issue are worded in somewhat broader terms than the claims of Knight it is evident that both the Jenks and Knight patents claim substantially the same invention. It is also evident from the file wrapper history of the original Knight application that Knight was claiming this invention prior to and throughout the period between the issuance of the Jenks patent on June 17, 1930 and the issuance of the Knight patent on November 17, 1931."

The Board said:

"* * * The claims on appeal taken from the Jenks patent are more specific to a certain extent in being limited to a control system for rolling mills provided with a plurality of rolls but we note that Knight

disclosed his control device as applied to rolling mills for positioning one of the rolls relative to the other. We have not been shown and do not consider the claims on appeal set forth a different invention from that expressed in the Knight patent claims as above noted. Certainly the Knight claims as to the mechanism in which the electric control is used are broader than the Jenks claims."

We are not convinced that the tribunals were in error in holding that during the pendency of the Jenks application and afterwards appellee was claiming substantially the invention here involved and that some of the claims in Knight's patent are for substantially the same invention as is here involved.

Claim 3 of the Knight patent reads as follows:

"3. A device of the character described having in combination, a material modifying apparatus, a reversible intermittently operable electric motor, a source of power therefor and means for closing the motor circuit to inaugurate operation, of means for determining the direction and extent of such operation as inaugurated by successive operations of said first-mentioned means, comprising a controller positively driven by said motor and provided with adjustable devices for temporarily maintaining the motor circuit closed and opening it at selected points of controller travel, and adjustable means for selecting forward or reverse motor connections for subsequent closure by said first-mentioned means and alternative means for manually controlling the starting, stopping or reversing of said motor."

We have examined the claims which were presented by Knight, but which were rejected upon the grounds above stated, and other claims such as claim 3, supra, which were suggested by the Examiner and were accepted in lieu of the rejected claims. While the language of the involved counts and that of the canceled and allowed claims differs somewhat, we are not convinced that the tribunals of the Patent Office were in error in holding that all of said claims were substantially for the same invention. It seems to us that the difference between them is more in the form of expression than in the inventive subject-matter covered.

It may be pointed out that although Knight has filed his reissue application within two years of his own issued patent, he would not be entitled to a reissue, the basis of which is inadvertence, if in fact he did claim the invention and canceled the claims therefor, or if in fact his invention is already in the claims of his issued patent. The subject of the right of appellee to a reissue patent was referred to by the Board and it was its view, as it is ours, that that is a matter for ex parte consideration with which we are not now concerned.

For the reasons stated by the Board, we are of the opinion that it should not be held that Knight is estopped by reason of alleged laches to claim the invention at bar and that under the circumstances the Board properly affirmed the decision of the Examiner of Interferences awarding priority of invention expressed in the counts to the party Knight, and its decision is affirmed.

Affirmed.